Howry, J.,
delivered the opinion of the court:
Plaintiff, on April 25, 1888, entered into a contract with the defendants, represented by the Secretary of the Navy, to furnish all necessary labor and material and erect and construct upon the monitor Terror all the machinery and appurtenances necessary to the complete application of power known as the pneumatic system for the'manning and working of the turrets and a part of the armament of the monitor, to the steering- of the vessel, and to the permanent maintenance thereon of a uniform refrigerating temperature. The contract price was fixed at $228,750, and plaintiff agreed to deliver the machinery and appurtenances upon the monitor at the navy-yard, Boston, Mass., and commence the work of installation within six months from the date of the contract. The Terror was then under construction at the navy-yard in Brooklyn, N. Y. Shortly after the execution of the contract, plaintiff procured the South Boston Iron Works, a manufacturing concern in Boston, to manufacture the machinery in that city and to install the same when the Terror should be brought to Boston. The subcontractor proceeded in accordance with the terms of plaintiff’s contract with the defendants, and at the expiration of the six months had the machinery completed, as far as the same could be finished in the shops. Plaintiff was aware of the unfinished condition of the vessel, but no notice was given to it by the defendants of their inability to bring the vessel to Boston, and its subcontractor was compelled to hold the machinery until such time as the monitor might appear at Boston. This state of uncertainty continued until a contract was entered into between plaintiff and the United States, by which it was agreed, for the further sum of $11,500 to be paid to plaintiff, that the machinery should be delivered at the Brooklyn Navy-Yard within sixty days from the date of the contract. The subcontractor, acting for plaintiff, proceeded under the supplemental contract to remove the machinery to Brooklyn, and on January 8, 1891, had it all there ready to begin the work of installation. The monitor, however, was not sufficiently completed to receive the machinery in its proper place, and by reason of the uncompleted condition of the vessel and interferences with *88 workmen engaged in its construction plaintiff was debited in the work of applying and fitting the machinery.
The findings establish damages in the sum of $14,612.88, occasioned by these acts of the defendants.
But for these acts it is claimed that whatever damages arose accrued to the subcontractor and not to plaintiff, and that for this reason the action can not be maintained.
It appears that there has been no accounting between plaintiff and the subcontractors; that no money has passed between these concerns, and no claims have been presented by the subcontractors to their principal; and, in consequence, it is argued that plaintiff can only recover such damages as it appears it alone has suffered, without reference to ivhat injury subcontractors may have sustained.
At the time plaintiff entered into the contract it had no plant of its own for the manufacture of machinery. The arrangement made bjr plaintiff with the South Boston Iron Works to manufacture and install the machinery proceeded until in turn the Hunt-Spiller concern, another company, was engaged to go on with the work.
The defendants- had no contract relations with the South Boston Iron Works or with the Hunt-Spiller Company, and can not be held to answer directly to those concerns. Defendants’ responsibility is direct only to the other principal party to the agreement, while the subcontractors must look alone to their principal for whatever damages may have arisen to them in consequence of delay or interruption of the work of that principal affected by the acts of the other principal. If plaintiff can not recover, then the whole loss must fall upon the party not in fault unless plaintiff shall hereafter pay the subcontractors, and then within the limit of time allowed by law to bring suit to recover. This, the- defendants insist, they should do before the damages can realty become a claim against the United States. But this theory ignores the fact of any subcontract being necessary to the fulfillment by plaintiff of its contract with the defendants, a fact which defendants knew in the progress of the work, if not in the beginning.
Subcontracts are the common incidents of building and other similar enterprises. They are ordinarily entered into preliminary to undertakings of the character shown here, and *89 in case of delays and interferences caused by a party ordering work and material the measure of damages done the other principal is usually the measure of compensation due subcontractors by the principal not in fault. There is no element of uncertainty in what the damages to subcontractors should be after it is ascertained that the principals have caused.damages in a precise and definite sum. Such is the case here. Those cases of subcontract where damages sustained by the subcontractor should not enter into the estimate of the amount recoverable against the party first causing the damage rest upon the idea that the party having no control over or participation in the making of the subcontracts should not be compelled to assume them if improvidently entered into, and the further idea of assuming that the party complaining is necessariljr compelled to break all his subcontracts as the consequence of the breach of the principal one. But here the case is different. We know the subcontractor sustained the same helajes and interruptions as did the plaintiff. There is nothing-hypothetical or remote in the sums claimed or in the amounts that the subcontractors can claim of the plaintiff. The acts of the defendants operated precisely upon all the other parties alike in proportion to the extent of their respective interests. The defendants are not liable for any subcontracts improvidentty made. It is certain that plaintiff’s contract with the South Boston Iron Works was broken by the fault of the United States. We think defendants should answer at this time without waiting for plaintiff to first pay the damages sustained by the subcontractors, because these damages would not have been caused had the United States kept faith with the other principal to the agreement.
The work of installation proceeded so slowty a board of naval officers was appointed November 20, 1894, by the Secretary of the Navy to make an estimate of the actual cost of completing the work. This board estimated the time at seventy working days, at a total cost of $11,553, and in February, 1895, another supplemental contract was entered into in consequence of the delays, largely attributable to the failure of the Government to complete the construction of the hull of the monitor, but also in consequence of the subcontractor being without financial means at that time to go on under the *90 original contract. Defendants took charge of the work but did not complete the same until May 29, 1897, at a cost of $41,221.08.
When the work was completed plaintiff submitted a request to the Secretary of the Navy to examine a statement (then being prepared by plaintiff) of extra expenses incurred by reason of defendants’ unreadiness and delays in connection with the contract, and to expedite the settlement plaintiff requested the Secretary to organizo a board to examine the whole subject, hear the company’s representatives, and receive the evidence presented by the company, and report what in their judgment was a fair settlement to be made. In response the Secretary appointed a board which convened and considered claims for additional compensation, claimant appearing before it by witnesses and counsel. One of the claims presented to and disallowed bj^ the board was that under the second supplemental contract, in which it was claimed that the United States had expended $30,054.12 more than was necessary, and more than it had a right under the contract to expend, in the work of completion. Other claims growing out of delays on the part of defendants were urged by plaintiff. The report of the board was approved by the Secretary of the Navy, less an allowance for certain items embraced in the report, leaving a balance due with the Secretary’s approval of $1,788.66. But there was a total disallowance of the demand for $30,054.12.
In considering this claim for the alleged overcharge of defendants for completing the work it should be observed at the outset that the contract for its completion by the Government was not based upon the estimates of the board. The contract itself contained no limitation upon the amount which the United States was entitled to charge to plaintiff for labor performed and material furnished, but gives to the United. States the right to charge whatever was actually expended. The entire work was largely experimental, and some changes were necessary to be made in the machinery to make it efficient and effective. It seems reasonable to say that changes were imperative in so delicate and important an undertaking. It is usual in setting similar work to leave machinery about one thirty-second of an inch to work off in the fitting, but in this *91 case certain bearings were necessary to be fitted with such exactness of measurement and minuteness of detail that they, when applied to the monitor, were allowed to have only a variation or play of two-thousandths part of an inch to make the work under the contract entirely successful. In adjusting the machinery and attempting to make it fit perfectly it appears that but one machinist could work on but one piece at a time, which caused the laying off at such times of the helpers to each machinist. Other difficulties incident to applying and putting in proper place each piece of machinery must have operated to properly delay the work. This work was done under an agreement for the employment of the engineer of the subcontractor or such other person in that capacity as might be designated, and the installation of the machinery thus proceeded under the supervision of plaintiff and the subcontractor. Though it is insisted by plaintiff that a better showing should be made as to how much of the cost was due to changes and how much to the dilatory methods pursued by the Government, it is at best but speculation to indulge in comments as to how much was expended for changes in the machinery and how much for labor. The findings establish that the actual cost proved to be more than the estimate of the board. The estimate did not bind the Government. The Secretary of the Navy may have relied on it, but it does not appear that plaintiff did, or was instrumental even in the appointment of a board. As the findings settle the actual cost of completion and do not establish the failure of the Government to prosecute the work with due diligence and proper economy, this must be the end of plaintiff’s contention under this item.
But the right of plaintiff to maintain the action for any damages at all is further denied on the ground that plaintiff discharged the United States from its demand on this account.
By the first supplemental contract plaintiff agreed to move the machinery to Brooklyn and proceed with the work of installation there. The consideration named for that purpose was doubtless fair and sufficient (as the parties agreed to it) for the transportation of the 150 tons of machinery and for the expenses incident to taking engineers, machinists, and other employees to Brooklyn to do the work. But damages had *92 been sustained by failure to have the monitor ready at the proper place, and the Government continued to cause damage by its prolonged failure to complete the hull of the vessel while plaintiff was undertaking to carry out the agreement under the supplemental contract. No waiver of these damages appears by the record, unless the acceptance of the amount stated to be due and the release given bjr plaintiff operated as such as now to estop plaintiff from asserting its demand.
When the account was finally stated the Secretary of the Navy required plaintiff to' execute a release in which it would “remise, release, and forever discharge the United States from all and all manner of debts, dues, sums and sums of money, accounts, reckonings, claims, demands, whatsoever, in law and in equity, for or by reason of or on account of the installation of said pneumatic system,” and the Secretary declined to approve any release except such as was unconditional, full, and final.
Under these circumstances, and protesting against the injustice of the Secretary’s decision, and denying his right to impose such terms, plaintiff executed the release and received payment of the balance shown to be due by the account.
The order appointing the board contained the following instructions:
“While it is intended that the board shall investigate thoroughly all matters appertaining to the account between the Department and the contractors for the' work done on the pneumatic system, it is not contemplated that this investigation shall extend to any claim or representation that may be made by the contractors concerning claims for extra compensation on account of the unreadiness of the vessel or delays in the progress of the work alleged to be due to the fault of the Department. ”
As the board did not have jurisdiction to consider any question of damages due from delay,- or really considered anything except those matters referred, the sole question now to be considered is the effect of the release.
The defendants contend that there was a good consideration for the release in that clause of the original contract which provides that—
“When all the conditions, covenants, and provisions of this contract shall have been performed and fulfilled by and *93 on the part of the party of the first part, it shall be entitled, within ten days after the filing and acceptance of its claim, to receive the said special reserve, or so much thereof as it may be entitled to, on the execution of a final release to the United States, in such form as shall be approved by the Secretary of the Navy, of all claims of-.any kind or description under or by virtue of this contract.”
The Secretary of the Navy having expressly declined to give the board appointed to investigate the account authority to award any damages for delays and interruptions, and having refused to entertain these claims himself on the report of this board, it can not be said that the release given was in settlement of disputed claims between the parties on account of the delays and interruptions. These demands remained open on their merits. The receipt given by plaintiff was not founded on any agreement to release claims not considered, and it was not a settlement of matters excluded from consideration by the Secretary. There was no adjustment of differences by way of compromise and settlement of claims for delays because of the unreadiness of the vessel at the proper place or because of interruptions to plaintiff in subsequently endeavoring to install its pneumatic system upon the monitor at Brooklyn.
But, conceding for the sake of the argument that the Secretary had jurisdiction, the minds of the parties did not meet in final settlement of the differences. Though the paper on its face appears to be a full and unequivocal release of all demands, the Secretary imposed terms which attempted to deprive plaintiff of money due to it, with notice from plaintiff of its intention to insist upon payment of a sum on account of the damage done. If the balance conceded by the Secretary was due by the terms of the contract, the payment thereof did not create a new consideration for the relinquishment by plaintiff of its other demands aganist the United States. To make the receipt of a part the discharge of the whole there must be a new consideration, or a voluntary and well-understood compromise of a disputable and disputed claim. (Child et al. v. United States, 12 Wall., 232, and 7 C. Cls. R., 209; Mann v. United States, 17 Wall., 67, and 8 C. Cls. R., 125; Comstock's case, 9 C. Cls. R., 141.)
*94 Nothing can be treated as a consideration that is not intended as such bjr the parties. (Insurance Association v. Wickham, 141 U. S. R., 564, and authorities there cited; Cape Ann Granite Company v. United States, 20 C. Cls. R., 1.)
In the progress of the work the attention of the Secretary' of the Navy was continually called to the causes which operated to create the claims for • damages. Both supplemental contracts recognized the fault to be largely on the defendants. When the settlement came to be made the Secretary kept within the terms of the contract and directed the payment of sums only which he had the right to direct to be paid.
As the causes which gave rise to the claims for damages were not considered by the board for want of jurisdiction, and were disregarded, no doubt, by the Secretary for the same reason so far as his official action was concerned, judgment will be entered for §14,612.88 in favor of plaintiff.