Barney, Judge,
reviewing the facts found to be established, delivered the opinion of the court:
This is a suit arising under a contract with the Navy Department for the erection of the officers’ mess building at the Naval Academy at Annapolis. By the terms of the contract this building was to be completed within eight months, which would have been on or before January 8, 1904. As the question of delays arises in this case, we will quote the provisions of the contract on that subject, which are two paragraphs of the specifications, and are as follows:
“27. Damages for delay. — In case the work is not completed within the time specified in the contract, or the time allowed by the Chief of the Bureau of Navigation under paragraph 26 of these general conditions, it is distinctly understood and agreed that deductions at the rate of $100 per day as liquidated damages shall be made from the contract price for each and every calendar day after and exclusive of the date within which the completion was required up to and including the date of completion and acceptance of the work, said sum being specifically agreed upon as the measure of damage to the United States by reason of delay in the completion of the work; and the contfactor shall agree *100 and consent that the contract price, reduced by the aggregate of damages so deducted, shall be accepted in full satisfaction for all work done under the contract.
“ 29. Avoidable delays. — Avoidable delays are such as result from causes which the contractor might, by care, prudence, or foresight, have guarded against or prevented. Should the progress of the work be delayed at any time by such causes, the contractor distinctly and specially agrees and consents that the amount of any and every expense to the United States caused by such delay may be deducted and withheld from any payment due or becoming due to him on account of the work, and that the contract price, reduced by such amount, shall be accepted by him as full compensation for the work done under the contract.”
The question now for decision arises upon a motion for a new trial and is based upon alleged errors of law in the decision of this court on the original trial. The former findings and opinion will be withdrawn and new findings made and the case will now be considered de novo.
It is contended by the Government that there is no inconsistency in these two paragraphs, and that both can and should be enforced. It is argued that paragraph 27 provides for liquidated damages for one kind of delay, while paragraph 29 provides for the payment of the actual “ expenses ” occasioned by delays of a different character. This contention is based upon the difference in the language of the two paragraphs, the first providing in general terms for the payment of liquidated damages for delays and the second for payment of expenses occasioned by delays in the “ progress of the work.”
. On the other hand, it is contended by the claimant that paragraph 27 should be construed as providing for a penalty and not liquidated damages. Hence construing both of these paragraphs together the Government was entitled only to actual damages occasioned by the delay in the completion of the building, which were what it was compelled to pay for commutation of quarters for officers who would have occupied the building during said time and for cost of inspection during the same period.
The conduct of the parties to the contract during its performance makes it unnecessary to enter into a discussion of *101 the question thus raised as to the construction to be given to the two paragraphs above quoted. The findings show that on January 7, 1904, the day before the contract period expired, the claimant made an application for an extension of time for the completion of the building to May 10, 1904. In reply to this application the Assistant Secretary of the Navy approved the recommendation of the Superintendent of the Naval Academy that the “ contractors be authorized to complete the work, and that decision as to the remission of penalties and extension of time be suspended until completion of the work.” On May 9, 1904, the claimant made another application for an extension of time for the completion of the building, this time for two months, and the answer given was that this request would be “ filed for reference on the completion of the work.” The building still remaining uncompleted, the claimant made another application for an extension of the time on July 9, 1904, this time for 30 days, and the answer to this application called attention to the previous replies made to such application, and said “under the above circumstances no application at this time from you is necessary.”
August 5, 1904, the department requested the claimant to submit any request it might see fit for an extension of the contract period, to which the claimant replied, giving its reasons for such request. This matter was referred to the Judge Advocate General for a report and recommendation, and that officer recommended that paragraph 27 be construed as providing for a penalty. On the coming in of the report the Assistant Secretary referred the whole matter to a board, which in brief approved of the recommendation of the Judge Advocate General and estimated the damages to the Government by reason of the delay at $663.77, which included only cost of inspection and cost of commutation of quarters during said period of delay. This report was returned by the Assistant Secretary to said board for further consideration, and suggesting that the cost of the building should be taken into consideration in estimating the damages. A second report was made, in which this recommendation was followed and the damages were estimated at $5,466, and this report was approved.
*102 March 12, 1906, and nearly two years after the building was completed and accepted, the claimant made another application for an extension of the contract period, which was denied, the department saying that it considered the matter as res judicata. July 18, 1906, the claimant made an application to the Chief of the Bureau of Navigation for such extension, which application reached the Assistant Secretary of the Navy, who made substantially the same reply as last above.
From the foregoing statement it will be seen that no decisive action was taken upon the several applications of the claimant for further time, at least so far as granting or refusing any of them, until long after the building was completed and accepted, and then only inferentially by declaring the matter closed.
We think the legal effect of the action taken by the Government upon these several applications for extension of the time for the completion of the building, as above stated, was to give the claimant a reasonable time for that purpose. It was given permission to complete the building, and as no time for this purpose was stipulated the law implied a reasonable time. United States v. United Engineering Co., 234 U. S., 236, 242.
There is no evidence in this case to show, and the findings do not show, that the claimant took an unreasonable time to complete the work. In fact, if we are to accept the statement of the commandant at the Naval Academy, the claimant “ used their best efforts to complete the work as soon as pos-ble.” The legal result of this fact is that there never was any breach of the contract on the part of the claimant.
The facts in this case are very much like those in the case of Maryland Steel Co. v. United States, recently handed down, and in which the court said:
“ It may be that the Government would have had the right to annul the contract upon the default of appellant and avail itself of resultant remedies. It did not do so, but preferred to retain the contract and extend the time of its execution; and, we may assume, upon a consideration of the circumstances — as much in view of the Government’s interest as appellant’s interest, the Government suffering no damage by *103 the delay, but getting the instrumentality for which it had contracted in time for its purpose, sooner, indeed, it may be, than if it had annulled the contract with appellant and re-let the work to another. These were considerations which the Quartermaster General, in the Government’s interest, might well entertain. And it may have seemed to that officer that it would have been as harsh as it would have been useless to sacrifice what had been already done, and faithfully done, by annulling the contract or by refusing to excuse the delay in final performance which was without fault. The case should be judged by that consideration and conduct.”
In comparing that case with the case of Bethlehem Steel Co. v. United States, 205 U. S., 105, the court further said:
“ It will be observed, therefore, that a condition of recovery was proof of violation of the contract. The condition does not exist in the case at bar. The contract was not violated. The time for its performance was extended, and, we may observe, before any default had occurred. In that case there was no waiver of the time limit; in the case at bar there was an express waiver. That case, therefore, fails in its asserted analogy. Undoubtedly parties may agree that time shall be of the essence of their contract and, the .proper legal conditions existing, may stipulate for damages and the measure of them, but they may subsequently change their views and requirements and consider that performance within the stipulated time is unimportant.”
There having been no breach of the contract on the part of the claimant it necessarily follows that no damages can be assessed against it under paragraph 27 whether we construe it as providing for a penalty or liquidated damages. We are thus to look to paragraph 29 to ascertain what sum should be deducted from the contract price on account of the “ delay ” therein provided for.
The findings show that the expense to the Government on account of that class of delays was $663.77.
Having thus decided that the defendants are only entitled to damages (under paragraph 29) on account of the delay in the completion of the building, the next question to be considered is whether the paper signed by the defendants, as shown in Finding IV, is a final release of all claims growing out of the contract in question. If it is, of course that is the end of this case. United States v. Cramp & Sons, 206 U. S., 118.
*104 Before signing this alleged release the claimant had written the Secretary of the Navy claiming that the sum of $5,466 had been unjustly deducted on account of the delay in the construction of the building, and requesting that it be paid the retained percentages without being required to execute a final release which would include said sum of $5,466. The receipt of this letter was duly acknowledged by the Secretary of the Navy and, referring to this request of the claimant, concludes:
“A form of release, also a form of patent guaranty, are inclosed herewith. Upon the return thereof, duly executed, instruction for the payment of the amount due under the contract will be given. The release to be submitted in accordance with this letter may be accompanied by such statement, if any, as you may desire to make explaining your attitude or views in the matter. See case of Pneumatic Gun Carriage & Power Co. v. The United States, 36 C. Cls. R., p. 71.”'
Whereupon the claimant wrote another letter to the Secretary of the Navy inclosing the release sent to it, as stated in the above extract, duly signed. The letter inclosing said release contained the following statement:
“ In compliance with the requirement of this letter, we now return the form of release and also the form of patent guaranty, as inclosed in your letter, both duly signed by us.
“ In doing this we beg to state that we do not mean to release our claim for the balance of $5,466 withheld under the decision of the field board and approved by your predecessor on account of expenses said to have been incurred by the United States because of the noncompletion of the building within the contract time. We shall, simultaneously with-this, present to the Court of Claims a claim for this sum heretofore denied us by the Navy Department.”
The facts in this case connected with the giving of this release are much like the facts in the case of Pneumatic Gun Carriage & Power Co. v. United States, 36 C. Cls., 71, where it was held that a release executed under such circumstances was not a final release. The case of the claimant, however, is much stronger than that of the Pneumatic Gun & Power Co. As will be seen by the above extract from the letter of the Secretary of the Navy, the claimant was *105 induced, if not advised, to execute what upon its face would be a final release and save his rights by inclosing it in a letter explaining it to be otherwise, and the Pneumatic Gun & Power Co. case was referred to, inferentially at least, as an authority for the propriety and legality of such a procedure.
As between private individuals no court would ever hold á release executed under such circumstances to be binding as to claims thus reserved, and we do not think a different rule should prevail between the Government and its citizens. If the release as explained by the letter was not satisfactory to the Secretary of the Navy, he should have returned it and demanded a release with no exception. But he gave the advice in good faith and received in reply just such papers as he expected.
The Secretary of the Navy never intended that such an unfair advantage should be taken of the result of his advice, and we do not believe the Government either in good conscience or law should be allowed to do so.
"We accordingly hold that the release and the correspondence in connection with it, as shown by the findings, should be construed together and that such construction reserves to the claimant its claim in this case.
The defendants’ motion is overruled, and it follows from the foregoing that the claimant is entitled to recover the sum of $4,802.23, and judgment in its favor in that sum is ordered.
All concur.