MaddeN, Judge,
delivered the opinion of the court:
Plaintiff sues for various alleged breaches by the defendant of a contract between the parties for the construction of a Federal Penitentiary, near Lewisburg, Pennsylvania. The alleged breaches consist of extras ordered and not paid for and of delays in the progress of the work caused by the defendant and resulting in extra costs to plaintiff. As to a number of the alleged extras ordered and not paid for, and as to a small balance due on the contract, the defendant does not contest its liability.
The contract was entered into January 31,1981, as a result of competitive bidding after advertisement. The contract provided that the work should be completed within 425 days from the receipt by the contractor of notice to proceed.
' That notice was given on February 14, 1931, thus fixing the completion date as April 14, 1932. The project was a large one, the contract price being $2,781,800.00.
The defendant needed the new penitentiary urgently, in the opinion of its officers, and the preparation of the plans and specifications by the defendant’s architect for submission to bidders had been done in less than the usual time. They therefore omitted a good many dimensional figures and details which were later supplied. The omissions were obvious and the bidders, including plaintiff, the successful bidder, seem to have been able to make their estimates in spite of these omissions. On February 21, 1931, shortly after the contract was made, the architect supplied plaintiff a set of blueprints with these additions as well as corrections of errors which had been discovered, made with a colored pencil. There were some seven hundred of these insertions. Others were later made in other colors. Thereupon began an argument which extended through some months, the work going forward meanwhile with the corrected plans, as to whether the defendant or the architect should not supply plaintiff with a new clean set of blueprints containing all the insertions. Finally the defendant refused to release the *500 original tracings necessary for new blueprints, and they were never made.
Plaintiff introduced much evidence as to these additions to the prints and its efforts to have new prints made. Expert builders testified on plaintiff’s behalf that plans marked up in this manner would tend to cause confusion and delay. There is no evidence, however, that the condition of the plans did cause misunderstanding, confusion, or delay in the work. Indeed, Walter Landin, plaintiff’s superintendent at the job whose responsibility it was to interpret the plans and see the building constructed accordingly, was not called as a witness, though still in plaintiff’s employment at the time of the hearing. We have therefore found that plaintiff has not'proved delay or resulting damage due to the refusal to furnish new and clean blueprints.
The defendant made a good many changes in the plans, as distinguished from the insertions discussed above, as the work progressed. Among the largest of these were the following: ornamentation was eliminated; the size of the entrance gate building was reduced; numerous stairways to make the buildings safer from the hazards of fire were added; the type of the factory building was changed. When the defendant proposed a change, as it had a right to do under Article 3 of the contract, plaintiff was invited to make an offer of the reduction in price it would permit or the increase it would ask because of the change. There were frequent and substantial disagreements between plaintiff and the architect about these figures, but in all except three cases they bargained to an agreed figure, or, with the consent of both parties, a figure or basis of determination was set by the supervising architect in the Treasury Department, which was embodied in a supplemental contract. In the three exceptional cases the contracting officer finally set a price, and plaintiff made no protest. Extensions of time were granted, as agreed upon, when these modifications were made. The net total additions to the contract price resulting from these modifications was $151,598.97, and the extensions of time moved the completion date forward from April 14, 1932, to November 19, 1932. The project was in fact completed and finally inspected on November 7, 1932.
*501 Plaintiff claims that these agreed additions to the contract price took no account of anything more than the actual additional cost, with overhead and profit, of doing the additional work; that they provided no compensation for delay on the job in general, or in other particulars, caused by the agreed change and the time it took to contract for it and to execute it. In signing the modification agreements, plaintiff told defendant’s agents orally that it was going to claim damages for delay, but some 29 out of 109 supplements contained a clause inserted by the defendant to the effect that no damages would be claimed for delay.
Since the contract expressly permits the defendant to make changes and the plaintiff to be compensated therefor as agreed, we think the kind of supplemental agreement contemplated by the contract is one which leaves no further unliquidated claim such as the one asserted here. But we also think, as hereinafter indicated, that even if plaintiff had a right to claim damages for delay caused by modifications of the contract, it has not satisfactorily proved either the delay or the damage.
Plaintiff’s theory of proof and recovery as to the largest item of its claim is, in general, as follows. It has sought to show that the blueprints were not in the form approved by good usage, but were in a condition which would tend to cause confusion and delay. It has proved that numerous changes were made by the defendant in the project in the course of construction, and time was consumed in the settling of these changes; that some mistakes were made in the specifications which mistakes had to be corrected before the building could be built. It has presented evidence intended to show that the architect was more artistic than practical, and was difficult to get on with. Having presented this evidence tending to show fault on the part of the defendant, it then presented evidence showing what its actual construction costs were in each branch of its work, according to a table set out in its petition, and the total of such costs, amounting to $535,758.19. It then presented as witnesses several experienced builders, including plaintiff’s president, one or more of whom testified with reference to each branch of the work that its cost under proper and usual *502 conditions at the time and place should not have been more than a named figure.[1] The total of these figures is $271,-077.34. It then points to the difference between the actual costs and the alleged proper costs and says, “This difference, which with office overhead amounts to $285,249.59, is the damage caused by the inadequate blueprints, the numerous change orders, the errors in the specifications, the unreasonableness of the architect, and the rest of defendant’s conduct here complained of.”
Plaintiff seeks to recover under this blanket proof without proving the fact that any one or more of the asserted faults of the defendant caused any specific delay or any, even estimated, amount of damage.
We recognize and have recently applied the doctrine that if we find that a plaintiff has been legally wronged, a certain unavoidable indefiniteness in the proof as to just how much money it would take to compensate him for the wrong will not prevent a recovery of a sum which the court concludes will fairly approximate that compensation.[2] That doctrine is not applicable here because neither the particular alleged faults of the defendant, nor the sum of all of them, constituted a legal wrong to plaintiff unless they caused damage. That the blueprints from which the building was built were not in conventional order; that the architect was artistic and difficult; that a good many changes were made in the plans of the building, the contract expressly giving the defendant the privilege of making changes; that the defendant was, in some cases, dilatory in finally approving changes; none of these things, even if we regarded them as proved, would constitute actionable breaches of implied terms of the contract here in suit unless they at least substantially harmed plaintiff. But there is no tangible evidence that they harmed plaintiff except the general testimony that the reasonable construction cost on the several branches of the work, and on the whole of it, *503 should have been not more than a named figure. There is no satisfactory evidence, and scarcely even an attempt to show, that because of certain specified conduct on the part of the defendant, certain work of plaintiff was delayed by a certain number of days, keeping men and machines idle, or otherwise harming plaintiff by an amount capable of even approximate measurement.
We note here again the failure of plaintiff to produce its construction superintendent whose job it was to keep the work going forward for plaintiff. He is the one who would have known what delays were caused, and whether and how they were harmful. The architect’s superintendent, who was also constantly on the job, testified that work which was otherwise ready to be done was not substantially delayed for the reasons charged. In this condition of the evidence, we cannot find that plaintiff was delayed and damaged in any ascertainable amount by the defendant’s alleged wrongful conduct.
Plaintiff is entitled to recover a total of $50,413.25, made up of the following items, not contested by the defendant.
Correction in screens_ $121.12
Connecting kitchen equipment. 1, 801.69
Enclosure wall extras_ 12, 773. 77
Extra terra cotta copings_ 9,527. 76
Extra cinders-3, 827.47
Added hospital equipment-387.20
Added stack work_ 450. 00
Supp. 70 (70 A)_ 47.72
Supp. 44-20,198.53
Balance due on contract_ 1, 277. 99
It is so ordered.
50, 413.25
JoNes, Judge; Littleton-, Judge; and Whalet, Chief Justice, concur.
Whitaker, Judge, took no part in the decision of this case.

 Witnesses for the defendant, estimators for builders who had bid on the job, but whose bids were higher than plaintiff’s, testified to “reasonable cost” figures much higher in many branches, and in the aggregate, than plaintiff’s reasonable cost figures.

 F. Mansfield & Sons Co. v. United States, 94 C. Cls. 397.