The **GEORGE HYMAN CONSTRUCTION COMPANY**, a Maryland Corporation, Plaintiff,

v.

The **UNITED STATES**, Defendant.

No. 90–87C.

United States Court of Federal Claims.

Dec. 2, 1993.

WEINSTEIN, Judge.

### Opinion [1]

Defendant has moved for summary judgment on the grounds that plaintiff's claim is barred by the *Severin* doctrine, which holds that a prime contractor may recover damages on behalf of its subcontractor only if the prime contractor alleges actual damages to itself. Following briefing by the parties, the court now grants the motion.

### Facts

The following facts are not in dispute.

Plaintiff, the George Hyman Construction Company (Hyman), contracted with the General Services Administration (GSA) for the construction of the Smithsonian Museum Support Center in Suitland, Maryland. Hyman subcontracted with Ratrie, Robbins & Schweizer, Inc. (Ratrie) for the concrete work on the project, including the construction of a sidewalk in front of the Support Center. Ratrie, through its subcontractors, had to pour the sidewalk, in whole or in part, four times before GSA found it acceptable. This additional work forms the basis of the damages alleged in the complaint.

---

1. This opinion originally was issued on October 29, 1993. The government requested publication. Therefore, the October 29 order is being reissued for publication, with minor revisions not affecting the substance of the decision.

After GSA rejected the third sidewalk, Ratrie sent Hyman a letter dated September 17, 1985 stating that Ratrie would replace the sidewalk again, but that it intended to recover its additional costs. On October 29 of that year, Hyman asked Ratrie to send a final requisition and suggested that Ratrie sign a lien release that excluded the sidewalk claim. Ratrie's assistant treasurer on November 4, 1985 executed a lien release, prepared by Hyman, that waived all claims Ratrie had against Hyman, *except* for the claim arising from the additional sidewalk expenses.

On December 9, Hyman issued a check to Ratrie for final payment on the subcontract. On the reverse of the check was stamped a printed endorsement releasing *all* claims against Hyman:

> Deposit of this check constitutes acceptance of same as full and final payment for all work performed or material furnished by payee and its subcontractors and suppliers on *Smithsonian Support Center* located at *Suitland, MD* and payee hereby fully releases and indemnifies payor from any present or future obligation with regard to all said work performed or material furnished on said site.

Exhibit 6 to Plaintiff's Proposed Findings of Uncontroverted Fact, at 2 (the underlined material was typed into blanks provided in the stamped endorsement). Ratrie deposited the check without reservation on December 12, 1985.

Hyman's subcontractor's accountant states in an affidavit, uncontroverted by defendant, that the check was stamped "inadvertent[ly]." Exhibit 7 to Plaintiff's Proposed

Findings of Uncontroverted Fact, at 2. Similarly, Ratrie's treasurer states in his affidavit that the check was deposited only because his assistant failed to bring the stamped language to his attention.

In March 1988, Hyman and Ratrie signed an agreement purporting to revive Ratrie's claim against Hyman. The parties agreed to distributing the costs of pursuing the claim against defendant and any recovery. The agreement provided that Ratrie could proceed directly against Hyman only if Hyman failed to sponsor the claim, and tolled the statute of limitations on Ratrie's claim against Hyman until the conclusion of all proceedings against the government.

Plaintiff's March 29, 1989 claim was denied by the contracting officer on June 28, 1989. On January 30, 1990, Hyman filed this action in the United States Claims Court[2] on behalf of itself and Ratrie, requesting money damages of $365,500.[3]

## Discussion
### Summary Judgment

■ Summary judgment is appropriate when there is no genuine issue as to a fact that is material to establishing the plaintiff's claim and the moving party is entitled to judgment as a matter of law. Rule 56(c) of the Rules of the United States Court of Federal Claims (RCFC); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). As under Rule 56 of the Federal Rules of Civil Procedure, summary judgment under RCFC 56 is not considered "a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which

---

2. The name of this court was changed from United States Claims Court to United States Court of Federal Claims by § 902(a) of the Federal Courts Administration Act of 1992, Pub.L. No. 102–572, 106 Stat. 4506, 4516 (1992), which was signed into law on October 29, 1992.

3. Ratrie's pass through claim is for $322,479. Hyman also has claimed a 10% fee ($32,248) and a .5% charge for added bond costs ($1,773), which Hyman contends are its own independent, direct claims. However, if this court cannot entertain Ratrie's claim, Hyman's claim also ap-

pears to fail, because Hyman's 10.5% of Ratrie's nonexistent recovery is zero. More importantly, because Hyman's claim is based upon its contract with Ratrie, and not upon a contract with the government, there appears to be no contract supporting this court's Tucker Act jurisdiction over such a claim. Nor does it appear to be a claim for moneys *presently* due and owing to Hyman *from* the government, as required by the Tucker Act. *See* discussion under "Subcontractor Claims and the *Severin* Doctrine," *infra*.

are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex*, 477 U.S. at 327, 106 S.Ct. at 2555 (quoting Fed.R.Civ.P. 1).

■ If the moving party demonstrates the absence of evidence to support an essential element of the nonmovant's claim, and the nonmovant fails to allege evidence sufficient to convince a reasonable trier of fact to find the existence of that element of the claim, the movant is entitled to summary judgment. *Anderson*, 477 U.S. at 248–49, 106 S.Ct. at 2510–11.

*Subcontractor Claims and the Severin Doctrine*

■ It has long been established that a subcontractor not in privity of contract with the government may not bring a direct action against the government in this court either for damages caused by the government's breach of its contract with the prime contractor, *Merritt v. United States*, 267 U.S. 338, 340–41, 45 S.Ct. 278, 279, 69 L.Ed. 643 (1925); *H. Herfurth, Jr., Inc. v. United States*, 89 Ct.Cl. 122, 127, 1939 WL 4215 (1939), or for equitable adjustment under the Contract Disputes Act of 1978 (CDA), 41 U.S.C. §§ 601–13 (1988), *see Erickson Air Crane Co. v. United States*, 731 F.2d 810, 813 (Fed.Cir.1984). The most often stated rationale for this rule is that in these cases there is no contract with the government as to which the federal government has waived its sovereign immunity to suit under 28 U.S.C. § 1491 (1988), the statutory basis for this court's assumption of jurisdiction over contract claims. *See, e.g., Erickson Air Crane Co.*, 731 F.2d at 813. The other rationales are the avoidance of confusion or duplicative litigation against the government and of collusion between the prime and subcontractor. These purposes also are served by the Anti-Assignment Act, 31 U.S.C. § 3727 (1988), another often cited reason for the subcontractor privity requirement.

The privity requirement leaves "[a]ggrieved subcontractors [with] the option of enforcing their subcontract rights against the prime contractor in appropriate proceedings, or of prosecuting a claim against the government through and in right of the prime contractor's contract, and with the prime contractor's consent and cooperation." *Id.*

*Severin v. United States*, 99 Ct.Cl. 435, 1943 WL 4198 (1943), *cert. denied*, 322 U.S. 733, 64 S.Ct. 1045, 88 L.Ed. 1567 (1944), was the first case deciding the issue of whether a prime could sue on its subcontractor's behalf if it had been released by the subcontractor. In *Severin*, a prime contractor brought claims on behalf of a subcontractor when, in the subcontract, the prime contractor and subcontractor had agreed to hold each other harmless for any damages caused by the government. The court concluded that the prime contractor could not pursue the claim on behalf of the subcontractor.

■ The *Severin* court held that "[p]laintiffs ... had the burden of proving, not that someone suffered actual damages from the defendant's breach of contract, but that they, plaintiffs, suffered· actual damages."[4] *Id.* at 443. Alternatively, if the plaintiffs were liable to the subcontractor, "that liability, though not yet satisfied by payment, might well constitute actual damages to plaintiffs, and sustain their· suit." *Id.* However, when the plaintiffs by contract "effectively ... protected themselves from any damage ... for such breaches," plaintiffs' suit for the subcontractor's damages would be "merely accommodating another person who was damaged, by letting that other person use, for the purposes of litigation, the name of plaintiffs...." *Id.* at 443–44. Under such circumstances, the court concluded, "[o]rderly administration of justice, as well as the statute prohibiting the assignment of claims[5]

---

**4.** *See Severin*, 99 Ct.Cl. at 443 (under the Tucker Act, the government did not consent to suit for breaches of contract involving no or nominal damages) (citing *Nortz v. United States*, 294 U.S. 317, 327, 55 S.Ct. 428, 430–31, 79 L.Ed. 907 (1935); *Great Lakes Constr. Co. v. United States*, 95 Ct.Cl. 479, 502, 1942 WL 4379 (1942)).

**5.** The Anti-Assignment Act, Act of February 26, 1853, 10 Stat. 170, R.S. 3477, subsequently codified at 31 U.S.C. § 3727. See *Spofford v. Kirk*, 97 U.S. 484, 488–89, 24 L.Ed. 1032 (1878).

seems to us to forbid that." *Id.* at 444.[6] *Id.* at 443–444.

Under the *Severin* doctrine,

> a suit of this nature may be maintained only when the prime contractor has reimbursed its subcontractor for the latter's damages or remains liable for such reimbursement in the future. These are the only ways in which the damages of the subcontractor can become, in turn, the damages of the prime contractor, for which recovery may be had against the Government. Thus, when the subcontract contains a clause completely exonerating a prime contractor from liability to its subcontractor for the damage complained of, suit cannot be maintained by the prime contractor against the Government. The same result will follow when the subcontract provides for a complete release of the prime contractor's liability to the subcontractor upon the granting of additional time for the latter's performance, or the acceptance of final payment by the latter.

*J.L. Simmons Co. v. United States,* 158 Ct. Cl. 393, 304 F.2d 886, 888–89 (1962) (citations omitted). Accord *Keydata Corp. v. United States,* 205 Ct.Cl. 467, 504 F.2d 1115, 1120–21 (1974); *J.W. Bateson Co., Inc. v. United States,* 143 Ct.Cl. 228, 163 F.Supp. 871 (1958); *Pearson, Dickerson, Inc. v. United States,* 115 Ct.Cl. 236, 253–54, 263, 1950 WL 5011 (1950).

Hyman argues that it is still liable to Ratrie on the sidewalk claim, and therefore the *Severin* doctrine does not bar the present action, because 1) the general release, despite its express terms, did not release Ratrie's sidewalk claim, for the reason that the parties did not intend to release that claim; and 2) even if the release was effective, the March 1988 agreement revived Hyman's liability on the claim.

*Reformation of the General Release*

 Hyman's first contention—that, notwithstanding the clearly contrary language of the general release, the parties intended to exempt the sidewalk claim—

amounts to a request that this court reform the release to reserve that claim.

> One who files a bill for reformation of a contract usually asserts that the written words do not express to others the meaning that he was trying to express; that he fully expressed that meaning outside the four corners of the document; and that the other party understood him, knew that meaning, and assented. He asks the court to interpret those extrinsic expressions and to make them legally effective. This is what the court does when it decrees reformation.

3 Arthur L. Corbin, *Corbin on Contracts* § 540, at 84–87 (1960 & Supp.1992); *see also American Employers Ins. Co. v. United States,* 812 F.2d 700, 705 (Fed.Cir.1987).

This precisely describes Hyman's position. The issue is no mere question of contract interpretation. *See* 66 Am.Jur.2d *Reformation of Instruments* § 6 (1973) ("When a court construes a written instrument, it is assumed that the instrument reflects the actual agreement of the parties, and the language calls for construction because it is uncertain or ambiguous. On the other hand, ambiguity or uncertainty has nothing to do with the reformation of a written instrument, but rather reformation is adjudged because the instrument, by reason of mistake or fraud, does not embody the true agreement of the parties.") (footnotes omitted).

That Hyman has not explicitly requested reformation is irrelevant, for the court considers "not the label that a party places on a motion or the perceived nature of the relief sought, but the true nature of the relief sought." *Britt v. Whitmire,* 956 F.2d 509, 513 (5th Cir.1992); *accord BBCA, Inc. v. United States,* 954 F.2d 1429, 1431–32 (8th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 192, 121 L.Ed.2d 136 (1992); *cf. Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 506, 79 S.Ct. 948, 954, 3 L.Ed.2d 988 (1959) (construing complaint as seeking relief requested in substance, though not by name).

 This court's jurisdiction to reform contracts is statutorily limited to contracts

---

**6.** The holding in *Severin* was not viewed as a radical departure from prior precedent (even the dissent in *Severin* did not claim it was wrongly decided but, rather, unfair, see *id.* at 445).

between a plaintiff before the court and the government. *See* 28 U.S.C. § 1491(a)(1) (1988). The jurisdiction of the Court of Federal Claims to award reformation or other equitable relief is limited to circumstances where it is incident to a money judgment. *United States v. King*, 395 U.S. 1, 3, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969). As a court of limited jurisdiction, which is based on the government's waiver of sovereign immunity to suit, this court may not expand that jurisdiction, and may assume jurisdiction only in those circumstances expressly and unequivocally allowed by statute. *See United States Dep't of Energy v. Ohio*, —— U.S. ——, ——, 112 S.Ct. 1627, 1633, 118 L.Ed.2d 255 (1992).

■ The court is aware of no statutory basis for asserting jurisdiction over the release. Plaintiff has not cited, and the court has not found, any instance where this court[7] has exercised authority to reform a private contract of this type.

Therefore, the general release remains effective,[8] and brings this case within the *Severin* doctrine.

*The March 1988 Agreement and the Severin Doctrine*

■ Hyman's second argument is that this action is not barred by the *Severin* doctrine because the March 1988 agreement revived Hyman's liability to Ratrie for the sidewalk claim. Even assuming *arguendo* that the March 1988 agreement is enforceable under Maryland law,[9] the court concludes that the *Severin* doctrine bars the claim under these circumstances, where the agreement was made after the general release.

Hyman relies on a line of cases permitting prime contractors to pursue claims on behalf of subcontractors even if the prime contractor is liable to the subcontractor if, and to the extent that, ("as and when") the prime contractor wins an award against the government. In other words, Hyman argues that such "conditional liability" as Hyman owes Ratrie under the March 1988 agreement meets the requirement of the *Severin* doctrine that the prime contractor be liable to the subcontractor. *See Keydata Corp. v. United States*, 205 Ct.Cl. 467, 504 F.2d 1115, 1120–21 (1974); *Owens–Corning Fiberglas Corp. v. United States*, 190 Ct.Cl. 211, 419 F.2d 439, 456–57 (1969); *J.L. Simmons Co.*, 304 F.2d at 887–90; *Barnard–Curtiss Co. v. United States*, 157 Ct.Cl. 103, 301 F.2d 909, 913 (1962); *Donovan Constr. Co.*, 138 Ct.Cl. 97, 149 F.Supp. 898, 900 (Ct.Cl.), *cert. denied*, 355 U.S. 826, 78 S.Ct. 34, 2 L.Ed.2d 39 (1957); *Brazier Forest Prods., Inc. v. United States*, 11 Cl.Ct. 468, 470 (1987); *Pan Arctic Corp. v. United States*, 8 Cl.Ct. 546, 548–49 (1985); *Folk Constr. Co. v. United States*, 2 Cl.Ct. 681, 685–86 (1983).

---

7. Plaintiff's citation to Court of Claims decisions in this area is not helpful. The Court of Claims was an Article III court, *see Glidden v. Zdanok*, 370 U.S. 530, 584, 82 S.Ct. 1459, 1490–91, 8 L.Ed.2d 671 (1962) (plurality opinion); the Court of Federal Claims is an Article I court, *see* 28 U.S.C. § 171 (1988). As such, its jurisdiction is limited to disputes over public rights, *i.e.*, not disputes between private parties. *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 67–70, 102 S.Ct. 2858, 2869–71, 73 L.Ed.2d 598 (1982) (plurality opinion).

Moreover, none of the cases plaintiff cited are germane, since all involved reformation of releases between a contractor and the government, not between a contractor and a subcontractor. *See J.G. Watts Constr. Co. v. United States*, 161 Ct.Cl. 801, 804, 1963 WL 8559 (1963); *Nippon Hodo Co. v. United States*, 160 F.Supp. 501, 142 Ct.Cl. 1, 3 (1958); *Winn–Senter Constr. Co. v. United States*, 110 Ct.Cl. 34, 75 F.Supp. 255, 260 (1948); *E.W. Bliss Co. v. United States*, 70 Ct.Cl. 176, 191, 1930 WL 2461 (1930); *L.W. Packard & Co. v. United States*, 66 Ct. Cl. 184, 191, 1928 WL

2966 (1928); *Noel Constr. Co. v. United States*, 50 Ct.Cl. 98, 104, 1915 WL 1106 (1915); *Pneumatic Gun–Carriage & Power Co. v. United States*, 36 Ct.Cl. 71, 83, 1900 WL 1386 (1901).

8. It also is not clear that the release was voidable as a mistake or due to fraud.

9. Agreements between prime contractors and their subcontractors, being private contracts, are governed by local law. *United States ex rel. Leno v. Summit Constr. Co.*, 892 F.2d 788, 792 (9th Cir.1989); *Peter Kiewit Sons' Co. v. Summit Constr. Co.*, 422 F.2d 242, 260 (8th Cir.1969). Hyman and Ratrie are both Maryland corporations, the agreement was executed in Maryland, and the construction project was in Maryland, so Maryland law would control. Under Maryland law, this agreement would not appear to be enforceable, since there was no consideration flowing from Ratrie to Hyman for the March 1988 release. *Beall v. Beall*, 291 Md. 224, 434 A.2d 1015, 1018 (1981); *Shimp v. Shimp*, 287 Md. 372, 412 A.2d 1228, 1234 (1980).

For example, in *J.L. Simmons*, the leading "as and when" clause [10] case, the prime contractor and its subcontractors executed general releases, which excepted one claim. Regarding that claim, the agreements stated, "Either the disallowance of [the subcontractor]'s claim by the court or the payment to [the subcontractor] by [the prime contractor] of the amount, if any, that may be recovered on said claim . . . shall completely extinguish all further obligation of [the prime contractor] to [the subcontractor]. . . ." *J.L. Simmons Co.*, 304 F.2d at 888.

The court concluded that, despite the *Severin* doctrine, the prime contractor could pursue the claim on behalf of the subcontractors, because the prime contractor was still liable on the claim.

> [I]t is apparent that, insofar as they relate to these particular claims, the releases are clearly conditional or contingent in nature. They become operable only if and when plaintiff prosecutes these very claims against the Government to a final judgment. Even then, if the claims are found meritorious, plaintiff's liability is not extinguished until actual payment is made to the subcontractors. Thus, the releases neither exonerate plaintiff from liability *ab initio* nor subsequently, but do impose certain obligations on plaintiff which it must fulfill before its duty to reimburse these subcontractors for the damage allegedly caused by the Government is extinguished. It is apparent, then, that plaintiff is presently subject to liability on these claims and will continue to be so until liability is extinguished in accord with the method agreed to by the parties.

*Id.* at 890.[11]

Hyman contends that, under these decisions, the March 1988 agreement creates sufficient liability for Hyman to bring this claim on Ratrie's behalf. The cited decisions do not govern the present case, however, for in each instance, the "as and when" clause was in the subcontract or release itself, not in a subsequent agreement.[12] This distinction is decisive for two reasons.

First, a post-*Severin* Court of Claims decision appears to so hold. The subcontractor in *Pearson, Dickerson, Inc. v. United States*, 115 Ct.Cl. 236, 1950 WL 5011 (1950), released all of its claims against the plaintiff prime contractors. *Id.* at 253–54, 263. According to the court in *J.L. Simmons* (though not mentioned in *Pearson, Dickerson*), "the plaintiffs [in *Pearson, Dickerson*] stipulated in open court that they were not liable to the subcontractor, but would pay over to the latter any amount allowed by this court on the subcontractor's claim." *J.L. Simmons Co.*, 304 F.2d at 889. The *Pearson, Dickerson* court, citing *Severin*, held that the plaintiffs could not bring any claims on the subcontractor's behalf: "The delay for which damages are claimed related entirely to work performed by plaintiffs' subcontractor for

---

**10.** The subcontract in *Donovan Constr. Co.* provided that the contractor would pay the subcontractor for extra work "as and when [the prime contractor] is paid therefor by the Principal [Government]." *Donovan Constr. Co.*, 149 F.Supp. at 900.

**11.** Of course, the "liability" presumed in *Simmons* is, under current practice, a mere fiction. In fact, the contractor is exposed to no liability because in most of these cases, including this, only the subcontractor's own attorneys actually prosecute the suit, at the subcontractor's sole expense, and the contractor is not even exposed to liability for a false certification since it is permitted to qualify its certification of the claim under the CDA by relying on the subcontractor's representations. *See Transamerica Ins. Corp. v. United States*, 973 F.2d 1572, 1580 (Fed.Cir. 1992). Thus, if the contractor lends his name to the suit, there is no set of circumstances for which the contractor can be monetarily liable.

**12.** *Brazier Forest Prods.* is not an exception to this statement. In that case, the prime contractor's bankruptcy reorganization plan, which did not mention the subcontractor's claim, was approved by the bankruptcy court in January 1986. In September of that year, the prime contract requested and received approval of an amendment to the plan providing that the prime contractor would remain liable to the subcontractor "to the extent that a money judgment is obtained in favor of [them] against the United States." *Brazier Forest Prods., Inc.*, 11 Cl.Ct. at 469. This is not a subsequent revival of the prime contractor's liability to the subcontractor, however, because, as the court noted, a modification to a reorganization plan operates *"nunc pro tunc."* *Id.* at 470. Thus, for our purposes, the agreement imposing conditional liability on the prime contractor (the modification) was contemporaneous with the document releasing the subcontractor's other claims against the prime contractor (the reorganization plan).

which, under the terms of the subcontract, plaintiffs were not liable to the subcontractor. The plaintiffs were not damaged and have suffered no loss." *Pearson, Dickerson, Inc.*, 115 Ct.Cl. at 264 (citations omitted).

Thus, the prime contractors' attempt to obligate themselves, by stipulation, to pay the subcontractor's claim as and when the prime contractors recovered an award from the government, *see J.L. Simmons Co.*, 304 F.2d at 889 ("plaintiffs' commitment to pay over to the subcontractor any recovery obtained"); *see also United States v. New York Tel. Co.*, 326 U.S. 638, 652–53, 655, 66 S.Ct. 393, 400–01, 401, 90 L.Ed. 371 (1946); *see generally* 83 C.J.S. *Stipulations* §§ 13–14, 27, 29 (1953), was rejected. They were not permitted to revive, in conditional form, any liability they might once have had to the subcontractor. *J.L. Simmons Co.*, 304 F.2d at 889.

That *Pearson, Dickerson* involved a stipulation, while the case at hand involves an agreement between the prime contractor and the subcontractor, is not material. Nothing in that decision, or in *J.L. Simmons's* analysis of it, suggests that it hinged on the *method* by which the prime contractors tried to revive their liability. If the plaintiffs "were not damaged," *Pearson, Dickerson, Inc.*, 115 Ct.Cl. at 264, despite the stipulation obligating them to convey any award to the subcontractor, then they would not have been damaged by a post-release agreement to the same effect. Instead, the problem was that once the prime contractors had been freed of liability, the claim against the government was barred by the *Severin* doctrine.

Second, while the "as and when" clause cases allow exceptions to the *Severin* doctrine when the clause makes the prime contractor's existing liability to its subcontractor *conditional* on a recovery against the government, they do not create exceptions for subsequent agreements purporting to revive (conditionally or not) the prime contractor's previously extinguished liability. The often quoted principle that "a suit of this nature may be maintained only when the prime contractor has reimbursed its subcontractor for the latter's damages or *remains* liable for such reimbursement in the future," *J.L. Simmons Co.*, 304 F.2d at 888 (emphasis added), implicitly involves a *continuing* liability, not a revived one. *See also Keydata Corp.*, 504 F.2d at 1121.

*Simmons* flatly states, "[W]hen the subcontract contains a clause completely exonerating a prime contractor from liability to its subcontractor for the damage complained of, suit cannot be maintained by the prime contractor against the Government," *J.L. Simmons Co.*, 304 F.2d at 888–889. This statement cannot be accommodated to a conclusion that such a suit may be maintained when the subcontractor completely exonerates the prime contractor by *modification* of the subcontract, *i.e.*, by a *release.*

Permitting the parties subsequently to "revive" (or to create a new) liability by mutual agreement would essentially nullify the *Severin* doctrine in every action before this court, since the very fact that the prime contractor is pursuing the subcontractor's claim evidences that just such an agreement exists.[13] Because the *Severin* doctrine is still in force,[14] *see, e.g., United States v. Johnson*

---

13. Permitting the contractor and subcontractor to create an obligation solely for purposes of suit against the government by an agreement entered into subsequent to the government contract and subcontract would vitiate every purpose of the *Severin* doctrine—to prevent assignment of claims against the government, to prohibit imposition of liability against the government without its consent, and to prevent actions against the government by those lacking privity of contract with the government. *See Severin*, 99 Ct.Cl. at 444.

14. Several cases purport to discover exceptions to the *Severin* rule. *See Seger v. United States*, 199 Ct.Cl. 766, 469 F.2d 292, 300 (1972) ("The *Severin* rule where it is applicable produces

harsh results. Where the provisions of the prime contract provide a mechanism that in a proper case can mitigate injury to the subcontractor, and such provisions are incorporated by reference in the subcontract, abstract legal doctrine of privity and exculpatory clauses in the subcontract do not control.") If read literally, as plaintiff in effect argues here, these cases would appear to abolish the *Severin* doctrine altogether. However, the policy reasons for preserving the *Severin* privity of contract doctrine are numerous. Eliminating the privity requirement effectively eliminates the prime contractor's responsibility for directing, supervising, and guaranteeing the subcontractor's performance, and makes the government liable to a party it has no direct

**178**

*Controls, Inc.*, 713 F.2d 1541, 1552 & n. 8 (Fed.Cir.1983), *Frank Briscoe Co., Inc. v. County of Clark*, 772 F.Supp. 513, 518 (D.Nev.1991) ("In *Folk*, 2 Cl.Ct. 681, a case decided twenty years after *J.L. Simmons* [in 1982], the United States Claims Court demonstrated that its analysis of prime contractor liability had not changed."), such a result must be rejected.[15] Moreover, no case decided by the Court of Claims or the United States Court of Appeals for the Federal Circuit has held or even suggested that the *Severin* doctrine has been overruled. That the Court of Claims has "placed limitations on the doctrine," *Folk Constr. Co.*, 2 Cl.Ct. at 685 (describing limitations), shows that, within those limitations, the rule still applies.[16]

### Conclusion

For the reasons stated above, defendant's motion for summary judgment is granted. The clerk is ordered to enter judgment in favor of defendant.

---

supervisory authority to hire, fire, or direct. The prime is able to evade its duty to serve as the government's supervisory agent, because, when there is a close call as to who is responsible for the subcontractor's damages, the contractor has every reason to blame the *government* since the usual subcontract, like this, provides that the subcontractor, because the subcontract provides that the subcontractor cannot sue the prime if the "owner" ("the *government*") is responsible for the subcontractor's damages but, rather, must rely on the prime to sue the government on its behalf. Thus, regardless of who is actually at fault the government, not the contractor, is likely to be sued first. At the time of the CDA, Congress considered and rejected the recommendations for statutory authorization of direct subcontractor appeals from board of contract decisions. S.Rep. No. 1118, 95th Cong., 2d Sess. 16–17, *reprinted in* 1978 U.S.Code Cong. & Admin. News 5235, 5250–51, *cited in Johnson Controls*, 713 F.2d at 1548–49, 1557 n. 18.

15. The court is aware of no government contracts practice manual suggesting that the *Seve-*

*rin* doctrine may be avoided by such agreements; instead, attorneys are advised to include "as and when" clauses in both subcontracts and releases to keep subcontractor claims from being barred. *See, e.g.,* 8 John C. McBride *et al., Government Contracts* § 49.130[4]–[6] (1993); John Cibinic, Jr. & Ralph C. Nash, Jr., *Government Contract Claims* 57–58 (1981); Jack Paul, *Claims and Remedies*, in *Basic Techniques of Public Contracts Practice* §§ 20.18–.20 (W. Harwood Huffart & Marvin Haiken eds., 1977); James J. Penne, *Subcontracts*, in *Government Contracts Practice* §§ 13.105–.109 (State Bar of Cal., Comm. on Continuing Educ. of the Bar ed., 1964). This further suggests that post-release agreements are not effective to avoid the *Severin* doctrine.

16. *Severin, J.L. Simmons,* and *Pearson Dickerson* were all decided by the Court of Claims in banc, *see* Act of May 11, 1966, P.L. 89–425, § 2, 80 Stat. 139, 140 (1966) (authorizing court to sit in panels for the first time), and thus are binding on this court and the Federal Circuit until and unless they are reconsidered en banc and reversed, Federal Circuit Rule 35(a).