**J. L. SIMMONS COMPANY, Inc.,**
a Corporation,
v.
**The UNITED STATES.**
No. 186–59.

United States Court of Claims.
July 18, 1962.

Thomas M. Gittings, Jr., Washington, D. C., for plaintiff. John W. Gaskins, Paul E. McNulty and King & King, Washington, D. C., were on the briefs.

Thomas J. Lydon, Washington, D. C., with whom was Asst. Atty. Gen. William H. Orrick, Jr., for defendant. Robert R. Donlan and James F. Merow, Washington, D. C., were on the briefs.

JONES, Chief Judge.

This suit is brought by the J. L. Simmons Co., Inc., in its own behalf as prime contractor and for the benefit of 12 of its subcontractors to recover additional costs and damages allegedly incurred as a result of defendant's breach of a construction contract. Defendant has filed a motion for partial summary judgment aimed at dismissing plaintiff's petition insofar as it represents claims in behalf

of nine [1] of these subcontractors for failure to state a claim upon which relief can be granted.

The factual background giving rise to this suit may be briefly summarized for the purpose of resolving the legal issue raised by defendant's motion. On October 5, 1949, plaintiff entered into a contract with defendant, acting through the Veterans Administration, whereby plaintiff agreed to furnish the labor, materials, and equipment, and perform all work necessary, for the complete construction of the West Side Veterans Hospital, Chicago, Illinois, and supporting facilities. Much of the work required to accomplish this result was thereafter subcontracted by plaintiff to other firms, twelve of whom are involved in this suit.

The claims here asserted relate to certain difficulties encountered by plaintiff and one of its subcontractors in the installation of the pile foundation for the main hospital building. It is said that plaintiff and these twelve subcontractors incurred the additional costs or damages sued for as a direct result of these foundation difficulties and the delays flowing therefrom. It is further contended that these difficulties were caused, primarily, by defendant's breach of contract in failing to provide a suitable and workable design for the construction and installation of this foundation.

Be that as it may, plaintiff finally completed its performance of the contract on April 30, 1953. On April 15, 1953, however, and at various times thereafter until December 18, 1956, plaintiff executed with each of the nine subcontractors encompassed by defendant's motion certain documents denominated "Subcontractor's Waiver of Lien and Release." The language of all of these documents is identical and provides:

"FOR THE CONSIDERATION AFORESAID, the undersigned hereby waives, releases and discharges any and all liens, claim or right of lien, which may be afforded the subcontractor by any state or federal law or otherwise, including but not limited to any lien against the above prescribed buildings and premises on which the same are located or against which any funds due or to become due J. L. SIMMONS COMPANY, INC., and any other claim or demand against J. L. SIMMONS COMPANY, INC., or its sureties, with the exception of its claim for losses because of engineering errors in design committed by the Veterans Administration. In the prosecution of any claim which J. L. SIMMONS COMPANY, INC. shall advance against the United States for losses resulting from such error of design on the part of the Veterans Administration, there shall be included the claim of the undersigned. General expenses incident to the preparation and prosecution of such claim of the undersigned shall be borne by J. L. SIMMONS COMPANY, INC., except that, at its own expense, the undersigned will provide for the attendance of whatever witnesses and the preparation of whatever documents may be necessary for the presentation of said claim. The selection of attorneys for the presentation of all claims (with the exception of the claim of MacArthur Concrete Pile Corporation who shall be permitted to engage counsel to act in collaboration with counsel selected by J. L. SIMMONS COMPANY, INC.) shall be controlled by J. L. SIMMONS COMPANY, INC. The portion of the

---

1. Defendant's motion is directed against the following subcontractors: (1) Coleman Floor Co., Chicago, Illinois, (2) Economy Plumbing & Heating Co., Chicago, Illinois, (3) Albert Pick Co., Chicago, Illinois, (4) Gateway Erectors, Inc., Chicago, Illinois, (5) Illinois Tile Co., Chicago, Illinois, (6) Estey Wire Works Co., New York, New York, (7) Mississippi Valley Structural Steel Co., Melrose Park, Illinois, (8) John F. Beasley Construction Co. (subcontractor of Mississippi Valley Structural Steel Co.), and (9) Hoffman Electric Co., Chicago, Illinois.

contingent fee to be charged against the recovered amount allocable to said claim of the undersigned, in the event that recovery is made, shall be as heretofore agreed upon in writing. Although J. L. SIMMONS COMPANY, INC. will attempt to have the claim of the undersigned separately considered and the amount thereof separately determined, it is recognized that such efforts may not be successful and that the amount allowed on said claim may be included in a single lump sum finding of damages sustained. If such be the case, the amount of the undersigned's allowed claim shall be arrived at by determining the proportion which its claim as computed by Department of Justice Audit bears to the total of all allowed claims as computed by Department of Justice Audit. Either the disallowance of the undersigned's claim by the court or the payment to the undersigned by J. L. SIMMONS COMPANY, INC. of the amount, if any, that may be recovered on said claim (less the proportion of expenses and attorneys' fees, hereinbefore referred to, and less 25% of the amount remaining after the deduction of such proportion of expenses and attorneys' fees) shall completely extinguish all further obligation of J. L. SIMMONS COMPANY, INC. to the undersigned under the subcontract of .............. hereinbefore referred to, and shall operate as a full and complete release of any and all liability of J. L. SIMMONS COMPANY, INC. to the undersigned arising out of the performance by the undersigned of its work under said subcontract."

Defendant's motion is premised on the proposition that these documents preclude plaintiff from asserting against the Government the claims of these nine subcontractors because of the so-called "Severin doctrine." Severin v. United States, 99 Ct.Cl. 435 (1943), cert. denied 322 U.S. 733, 64 S.Ct. 1045, 88 L.Ed. 1567 (1944). That is, these claims can-not now constitute a part of the damages sustained by this plaintiff, because of defendant's alleged breach of contract, since plaintiff has not reimbursed these subcontractors for their damages and has no independent liability to do so in the future, having effectively insulated itself from such liability by virtue of these releases. Defendant argues that the releases, although purporting to exempt these subcontractor claims, actually have the effect of relieving plaintiff of all possible liability for them. According to defendant, the documents simply provide for the happening of one of two possible events—if this court allows the claims of these subcontractors, plaintiff will pay over to them an unspecified amount of the recovery; if this court disallows their claims, all further obligation of plaintiff to the subcontractors will be extinguished. This, defendant concludes, is no liability on the part of plaintiff at all.

■■■ Since our decision in the Severin case, supra, this court has repeatedly delineated the only grounds upon which a prime contractor may sue the Government for damages incurred by one of its subcontractors through the fault of the Government. The decided cases make abundantly clear that a suit of this nature may be maintained only when the prime contractor has reimbursed its subcontractor for the latter's damages or remains liable for such reimbursement in the future. These are the only ways in which the damages of the subcontractor can become, in turn, the damages of the prime contractor, for which recovery may be had against the Government. Continental Illinois National Bank & Trust Co. v. United States, 81 F.Supp. 596, 112 Ct.Cl. 563 (1949); Warren Brothers Roads Co. v. United States, 105 F.Supp. 826, 123 Ct.Cl. 48 (1952); F. H. McGraw & Co. v. United States, 131 Ct.Cl. 501, 130 F.Supp. 394 (1955); J. W. Bateson Co., Inc. v. United States, 143 Ct.Cl. 228, 163 F.Supp. 871 (1958). Thus, when the subcontract contains a clause completely exonerating a prime contractor from liability

to its subcontractor for the damage complained of, suit cannot be maintained by the prime contractor against the Government. Continental Illinois National Bank & Trust Co. v. United States, 101 F.Supp. 755, 121 Ct.Cl. 203, cert. denied, 343 U.S. 963, 72 S.Ct. 1057, 96 L.Ed. 1361 (1952); Continental Illinois National Bank & Trust Co. v. United States, 115 F.Supp. 892, 126 Ct.Cl. 631 (1953). The same result will follow when the subcontract provides for a complete release of the prime contractor's liability to the subcontractor upon the granting of additional time for the latter's performance, or the acceptance of final payment by the latter. James Stewart & Company, Inc. v. United States, 63 F.Supp. 653, 105 Ct.Cl. 284 (1946); F. H. McGraw & Co. v. United States, supra. On the other hand, if the subcontract is silent as to the ultimate liability of the prime contractor to the subcontractor for the damages complained of, suit by the former against the Government in behalf of the subcontractor will generally be permitted. Warren Brothers Roads Co. v. United States, supra; J. W. Bateson Co., Inc. v. United States, supra. Lying between these extremes are those cases involving situations wherein the prime contractor has agreed to reimburse its subcontractor for damages it has suffered at the hands of the Government, but only as and when the former receives payment for them from the Government. This court has expressed the view that such clauses do not preclude suit by the prime contractor in behalf of its subcontractor in Donovan Construction Co. v. United States, 149 F.Supp. 898, 138 Ct.Cl. 97, cert. denied, 355 U.S. 826, 78 S.Ct. 34, 2 L.Ed.2d 39 (1957) and Barnard-Curtiss Co. v. United States, Ct. Cl., 301 F.2d 909.

Defendant takes the position that the releases here involved are completely exculpatory within the meaning of the decided cases and, for that reason, plaintiff should not be permitted to assert the claims of these nine subcontractors. Defendant relies particularly upon another decision of this court, that in Pearson, Dickerson, Inc. v. United States, 115 Ct.Cl. 236 (1950), in support of its conclusion. That case involved a situation wherein plaintiffs stipulated in open court that they were not liable to the subcontractor, but would pay over to the latter any amount allowed by this court on the subcontractor's claim. After first holding that the Government had not breached the contract involved and that plaintiffs had executed an unconditional release in favor of the Government, we went on to indicate that, in any event, plaintiffs could not recover on the subcontractor's claim since they had suffered no loss and were not independently liable to the subcontractor for its loss.

Defendant is of the view that the instant suit is precisely the same as Pearson, Dickerson, Inc., supra, insofar as the applicability of the so-called "Severin doctrine" is concerned. Since plaintiffs' commitment to pay over to the subcontractor any recovery obtained from this court was deemed immaterial in that case, the same should be true here.

We cannot agree that our decision in Pearson, Dickerson, Inc., supra, compels a decision in favor of defendant on its motion herein. Actually, analysis of that case shows that it is not significantly different from the other decisions we have cited above, for it also involved a subcontract containing a clause completely exonerating the prime contractors from any liability to the subcontractor. Consequently, Pearson, Dickerson, Inc., supra, is in harmony with our decisions on this issue and cannot be said to have established a significant departure therefrom. The crucial issue still remains one of determining whether the prime contractor has expressly negated any liability to the subcontractor for the damages sought to be recovered from the Government.

We think defendant's motion for partial summary judgment herein should be denied for the reason that the claims plaintiff is asserting in behalf of the nine subcontractors are not barred under applicable law. To begin with, there

is no clause in any of these subcontracts expressly negating plaintiff's liability to them for the claims being asserted. Similarly, there is no express exculpatory clause relating to these claims in any of the releases relied upon by defendant. On the contrary, these claims are explicitly exempted from the operative effect of the waivers contained in the releases. Despite this, defendant insists that the language of the releases does have the effect of insulating plaintiff from any liability to the subcontractors for these claims.

Defendant correctly points out that the releases provide, in the event plaintiff prosecutes these claims against the Government, that an adverse decision by this court on the merits of the claims will serve to extinguish plaintiff's liability to the subcontractors. Also, the payment over to the subcontractors of any recovery allowed on the claims by this court will have the effect of extinguishing all further obligation of plaintiff to its subcontractors. Defendant stresses these factors and, in so doing, would have us hold that they amount to a complete negation of plaintiff's liability to the subcontractors, even though that liability is preserved by the express terms of the releases.

In our view, defendant, in stressing the factors indicated, misconceives the over-all tenor of the releases. Although the language used may be somewhat inartistic, we think that, taken as a whole, the releases do recognize an existing liability on the part of plaintiff for these claims. We have indicated that plaintiff's liability is not expressly negated in any event. Rather, the releases simply purport to set forth the manner in which plaintiff's liability is *to be extinguished*. Certainly implicit, at least, in these provisions would seem to be a recognition on the part of the parties that plaintiff *is* liable for these claims. Otherwise, there would be no reason for the parties to go to the trouble of providing a method for extinguishing a non-existing liability. Consequently, we have here a situation where plaintiff's liability for these claims was recognized and expressly preserved at the time the releases were entered into.

Moreover, it is apparent that, insofar as they relate to these particular claims, the releases are clearly conditional or contingent in nature. They become operable only if and when plaintiff prosecutes these very claims against the Government to a final judgment. Even then, if the claims are found meritorious, plaintiff's liability is not extinguished until actual payment is made to the subcontractors. Thus, the releases neither exonerate plaintiff from liability *ab initio* nor subsequently, but do impose certain obligations on plaintiff which it must fulfill before its duty to reimburse these subcontractors for the damage allegedly caused by the Government is extinguished. It is apparent, then, that plaintiff is presently subject to liability on these claims and will continue to be so until liability is extinguished in accord with the method agreed to by the parties.

Accordingly, defendant's motion for partial summary judgment is denied.

It is so ordered.

DAVIS, DURFEE, LARAMORE, and WHITAKER, Judges, concur.