PAN ARCTIC CORP.

v.

The UNITED STATES.

No. 412–84C.

United States Claims Court.

July 29, 1985.

R.R. DeYoung, Anchorage, Alaska, for plaintiff.

Stephen J. McHale, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, for defendant.

## OPINION

SETO, Judge.

In this government contract case, a subcontractor has attempted to sue the United States directly, claiming it has been assigned all of the prime contractor's claims against the government. The underlying issues raised by defendant's motion to dismiss are: (1) whether the Assignment of Claims Act precludes a subcontractor from suing the government as an assignee; (2) whether the Severin Doctrine precludes the prime contractor from assuming the subcontractor's role as plaintiff in this action; and (3) whether certain counts of the complaint must be dismissed as sounding in tort. For the reasons stated below, defendant's motion is denied.

## FACTS

In April 1972, Worthington Service Corporation ("Worthington") entered into a negotiated contract with the U.S. Army Corps of Engineers for the removal of an engine-generator from Stewart Air Force Base in New York and its subsequent installation at Shemya Air Force Base in Alaska. Worthington then entered into a subcontract with Pan Arctic Corporation ("Pan Arctic") to perform all of the construction work necessary for installation of the engine-generator at the Shemya facility.

Following the denial of certain claims presented to a contracting officer for the Department of the Army, Pan Arctic filed this action pursuant to 41 U.S.C. § 609(a). Prior to the commencement of this action, however, and as a result of other litigation between them, Worthington and Pan Arctic entered into a settlement agreement wherein Worthington purported to assign all of its claims against the government to Pan Arctic, its subcontractor. Although the agreement barred each party from asserting any claim arising out of the subject contracts against the others, it outlined each party's role in the adjudication of the claims and delineated the distribution scheme for any potential recovery. On the basis of this agreement, and as Worthington's assignee, Pan Arctic sued the United States.

## DISCUSSION

*Assignment of Claims Act*

It is a fundamental tenet of Claims Court jurisprudence that a subcontractor may not sue the government absent privity of contract. *See Erickson Air Crane Co. v. United States,* 731 F.2d 810, 813 (Fed.Cir.1984); *United States v. Johnson Controls, Inc.,* 713 F.2d 1541, 1550–52 (Fed.Cir.1983). Therefore, a subcontractor without an independent basis for establishing privity with the government can seek redress only through the prime contractor. *See Erickson Air Crane,* 731 F.2d at 813–14.

In the instant case, Pan Arctic cannot sue the government in its own right because it lacks the requisite privity. Pan Arctic attempts to circumvent this jurisdictional limitation, however, by asserting it was assigned "all rights, title and interest in the claims which are the subject of this action" by its prime contractor, Worthington. Complaint at 2. Defendant argues that the Assignment of Claims Act, 31 U.S.C. § 3727 (1982), renders such an assignment null and void as against the Unit-

ed States inasmuch as Pan Arctic is not a qualifying financial institution. *See Uniroyal, Inc. v. United States*, 454 F.2d 1394, 197 Ct.Cl. 258, 261 (1972). We agree. Because the assignment was not within the terms of the Assignment of Claims Act, Pan Arctic is precluded from directly asserting its claim against the government as the assignee of its prime contractor. *See also Beaconwear Clothing Co. v. United States*, 355 F.2d 583, 174 Ct.Cl. 40, 49–50 (1966); *Royal Indemnity Co. v. United States*, 93 F.Supp. 891, 117 Ct.Cl. 736 (1950).

*The Severin Doctrine*

Because Worthington is the only party that can bring this action against the government, we must determine whether Worthington may be substituted as the party plaintiff. In its opposition to defendant's motion to dismiss, Pan Arctic seeks leave of court to so amend the complaint. Defendant objects on the basis that the settlement agreement between Worthington and Pan Arctic completely releases Worthington from any liability to Pan Arctic, thereby eliminating the foundation for a suit by Worthington against the government. *See Severin v. United States*, 99 Ct.Cl. 435 (1943), *cert. denied*, 322 U.S. 733, 64 S.Ct. 1045, 88 L.Ed. 1567 (1944). Defendant's invocation of the Severin Doctrine in the instant case, however, is inappropriate.

In *Severin*, the Court of Claims held that a contractor may sue the government for damages incurred by its subcontractor only if the contractor has suffered actual damages. *Id.* at 443. Therefore, such a suit may be brought "only when the prime contractor has reimbursed its subcontractor for the latter's damages or remains liable for such reimbursement in the future." *J.L. Simmons Co. v. United States*, 304 F.2d 886, 158 Ct.Cl. 393, 397 (1962). The doctrine thus provides that a contractor is precluded from maintaining a suit in behalf of its subcontractor when a contract clause or release *completely exonerates* the contractor from liability to its subcontractor.

*Id.*, 304 F.2d 886, 158 Ct.Cl. at 397–98. In such a case, the contractor has not suffered "actual damages." *See Severin*, 99 Ct.Cl. at 443.

Defendant asserts that the settlement agreement of January 23, 1979 operates to invoke the proscription of the Severin Doctrine. In particular, defendant cites the language in paragraph 2 wherein Pan Arctic agrees to be "barred from asserting any other claim against any party in this matter for this project." Plaintiff's Appendix, Exhibit E at 1. Defendant argues that this language completely releases Worthington from any liability to Pan Arctic, thereby precluding suit in this court. Defendant's narrow reading of both the Severin Doctrine and the settlement agreement, however, cannot withstand judicial scrutiny.

In *J.L. Simmons*, the court was careful to emphasize that where the release from liability is not *complete*, the contractor will be permitted to sue the government in behalf of its subcontractor. *J.L. Simmons*, 304 F.2d 886, 158 Ct.Cl. at 398–400. Thus, the court has held on numerous occasions that a contractor may bring suit where the "contractor has agreed to reimburse its subcontractor for damages it has suffered at the hands of the Government, but only as and when the former receives payment for them from the Government." *Id.*, 304 F.2d 886, 158 Ct.Cl. at 398. Accordingly, in cases where the contractor's liability is conditioned on receiving payment from the government, the Severin Doctrine has been found not to apply. *See Keydata Corp. v. United States*, 504 F.2d 1115, 205 Ct.Cl. 467, 476–79 (1974); *Owens-Corning Fiberglas Corp. v. United States*, 419 F.2d 439, 190 Ct.Cl. 211, 239–42 (1969); *Barnard-Curtiss Co. v. United States*, 301 F.2d 909, 157 Ct.Cl. 103, 111–12 (1962); *Donovan Construction Co. v. United States*, 149 F.Supp. 898, 138 Ct.Cl. 97, 99–100, *cert. denied*, 355 U.S. 826, 78 S.Ct. 34, 2 L.Ed.2d 39 (1957).

The instant case falls into this category as the settlement agreement executed by Worthington and Pan Arctic is not the complete exoneration required by the Seve-

rin Doctrine. Rather than extinguishing the liability between the parties, the settlement agreement merely defines the manner in which that liability is to be extinguished. *See J.L. Simmons*, 304 F.2d 886, 158 Ct.Cl. at 400. The agreement imposes certain obligations on both Worthington and Pan Arctic regarding the pursuit of their claims against the government. Specifically, the agreement provides that although Pan Arctic will formally prosecute the claims, Worthington will complete preparation of its own claims and produce all necessary documents. Moreover, it delineates the manner in which any potential recovery would be distributed among the parties to the agreement. Implicit in this agreement, therefore, is a recognition that Worthington remains liable to Pan Arctic, in accord with the terms of the agreement, for its claims against the government. *See id.* Such "conditional liability" on the part of Worthington is sufficient under the noted precedent to permit Worthington to sue in this court. The fact that the settlement agreement also purports to assign Worthington's claims against the government to Pan Arctic does not mandate application of the Severin Doctrine. *See Folk Construction Co. v. United States*, 2 Cl.Ct. 681, 685–86 (1983).

Therefore, Pan Arctic shall file a motion to amend the complaint to substitute Worthington as the party plaintiff and change the caption to "McGraw-Edison Service, successor in interest to Worthington Service Corp., for the use and benefit of Pan Arctic Corp." by August 30, 1985. Accordingly, defendant's motion to dismiss is denied without prejudice to renewal should Pan Arctic fail to file the required motion.

*Claim of Tortious Breach of Contract*

Defendant further alleges that Counts III and IV of Pan Arctic's complaint sound in tort and therefore should be dismissed. These counts assertedly arise under that portion of the contract which provides that salvageable material shall become the property of the contractor. Count III reads, in pertinent part, as follows: "21. The Government breached its contract by failing to preserve the condition of the salvaged generator while it was stored at Shemya awaiting shipment...." Complaint at 6. Count IV incorporates by reference certain of the allegations in Count III and states as follows: "24. In derogation of its duty to Plaintiff the Government was negligent in allowing the salvaged equipment to be pirated and robbed of its salvage value by its employees." Complaint at 6–7. Defendant argues that this language constitutes an allegation of conversion or negligence sounding in tort. Plaintiff rejoins that the language in the Complaint merely describes the manner in which the government performed, or failed to perform, its *contractual* duties.

■ The Court of Claims previously has held that an allegation of a tortious breach of contract is a sufficient jurisdictional basis for an action under the Tucker Act. For example, in *Chain Belt Company v. United States*, 115 F.Supp. 701, 127 Ct.Cl. 38, 54 (1953), the court stated as follows:

While it is true that this court does not have jurisdiction over claims sounding primarily in tort, an action may be maintained in this court which arises primarily from a contractual undertaking regardless of the fact that the loss resulted from the negligent manner in which defendant performed its contract. *Chippewa Indians of Minnesota v. United States*, 91 C.Cls. 97, 130, 131. A tortious breach of contract is not a tort independent of the contract so as to preclude an action under the Tucker Act. *United States v. Huff*, 165 F.2d 720, 723.

*See also Fountain v. United States*, 427 F.2d 759, 192 Ct.Cl. 495, 498 (1970), *cert. denied sub nom. Fountain v. Redevelopment Land Agency*, 404 U.S. 839, 92 S.Ct. 131, 30 L.Ed.2d 73 (1971); *Burtt v. United States*, 176 Ct.Cl. 310, 314–15 (1966). Therefore, this court shall not dismiss a complaint, otherwise based on contract, merely because it alleges that defendant's performance under the contract involved tortious conduct.

■ In the instant case, plaintiff states that "the words 'negligent' and 'neg-

ligence' are used simply to describe a lack of ordinary skill, competence and diligence by the Government in performing its contractual duty." Opposition to Defendant's Motion to Dismiss at 13. It appears clear to the court that the genesis of Counts III and IV is in contract. Therefore, plaintiff shall be permitted to adduce proof of its claims under Counts III and IV. The determination of whether the contract gives rise to the duties alleged to have been breached is a question to be considered on the merits. Indeed, it is "well-settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction." *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946), *quoted in Ralston Steel Corp. v. United States,* 340 F.2d 663, 169 Ct.Cl. 119, 125, *cert. denied,* 381 U.S. 950, 85 S.Ct. 1803, 14 L.Ed.2d 723 (1965). Therefore, defendant's motion to dismiss Counts III and IV also is denied.

### CONCLUSION

For the reasons stated above, Pan Arctic shall file a motion to amend the complaint as previously delineated in this opinion by August 30, 1985. Defendant's motion to dismiss is DENIED in its entirety without prejudice to renewal should Pan Arctic fail to file the requested motion.

IT IS SO ORDERED.