FRANK BRISCOE COMPANY, INC., a corporation, Plaintiff,

v.

COUNTY OF CLARK, a political subdivision of the State of Nevada, et al., Defendant.

No. CV–S–80–135–RDF.

United States District Court, D. Nevada.

July 31, 1991.

Morton R. Galane, R.L. Rickdall, Las Vegas, Nev., William Beadie, St. Paul, Minn., for plaintiff.

A. Wayne Lalle, Jr., Washington, D.C., Victor W. Priebe, Las Vegas, Nev., for Clark County.

## ORDER GRANTING PLAINTIFF'S MOTION FOR DECLARATORY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY AND DECLARATORY JUDGMENT

ROGER D. FOLEY, District Judge.

### INTRODUCTION

This Order is the latest decision in a case filed in 1980 between Frank Briscoe Company, Inc. ("Briscoe") and Clark County ("the County"). Currently pending before this court are Briscoe's Motion for Declaratory Judgment (doc. no. 1560), and the County's Motion for Declaratory and Summary Judgment (doc. no. 1561). These Motions involve Briscoe's standing to maintain this action against the County, and the County's liability to Briscoe.

This court heard oral arguments on these Motions on July 15, 1991. After considering these oral arguments and the parties' well-briefed Motions, this court renders the following decision.

### FACTS

These parties have enjoyed a long and tumultuous relationship with this court that began when Briscoe initiated an action against numerous defendants—including the County—in 1980. Originally, Briscoe, the prime contractor, sought declaratory and injunctive relief for disputes that arose during the construction of an advanced waste water treatment plant in Clark County, Nevada. The County counterclaimed against Briscoe for breach of contract, and Briscoe responded with its own breach of contract counterclaim against the County.

In 1983, Howard Electrical and Mechanical Company, Inc. ("Howard"), a Briscoe subcontractor on the advanced waste water treatment plant project, filed suit in this court against Briscoe for damages incurred during the construction of the water treatment facility. (doc. 1560, exh. A at 1). Additionally, Howard instituted arbitration proceedings against Briscoe. Subsequently, Briscoe filed an action against Howard in the United States District Court for the District of New Jersey.

Originally, Briscoe sought indemnification from the County for the claims of its subcontractors, including Howard. However, this court—in an Order issued after the trial between Briscoe and the County began—held that the contract between Briscoe and the County precluded the County's indemnification of Briscoe. (doc. no. 1561, exh. D at 12).

The day after this court issued its decision—and five months into the trial—Briscoe revealed to the court and opposing counsel a liquidating agreement signed by Briscoe and Howard on November 14, 1985.[1] The agreement provided that Briscoe would pursue Howard's claim against the County[2]; pay ninety-two percent (92%) of the litigation costs; remit a portion of the recovery, if any, to Howard;[3] and dismiss its New Jersey action against Howard. In return, Howard agreed to dismiss both of its pending actions against Briscoe, and accept its portion of the recovery from the County in full settlement of its claims against Briscoe. The following liquidating agreement provisions are important to the disposition of this case:

(1) Howard acknowledged that sole responsibility for its claims of, *inter alia*, increased costs, additional and extra work, impacts and delays rested with the County. However, because Howard was not in privity with the County, Briscoe agreed to assert Howard's claim against the County, and for that purpose, Briscoe acknowledged its liability for Howard's claims;

(2) the parties limited Briscoe's liability to Briscoe's obligation to present and pursue Howard's claims, and to remit a portion of the recovery to Howard;

(3) the parties agreed that Howard would bear the cost and responsibility of furnishing Briscoe with internal research, data, other evidence, witnesses and experts, and would pay eight percent (8%) of the litigation costs;

(4) Howard assigned to Briscoe "all of its rights, title of interest in and to any judgment, award or settlement amount allocated or determined as attributable" to Howard's claims (doc. no. 1560, exh. A); and

(5) the parties agreed to allocate any recovery from the County in the following manner: Howard would receive nine and one half percent (9.5%) of the first $20,000,-000, and five percent (5%) of any amount above $20,000,000.

About two weeks after this court denied Briscoe's indemnification claim, Briscoe moved this court for permission to amend its Complaint to allege subcontractor damages. In support of its Motion, Briscoe maintained: "Briscoe is obligated to Howard to pursue these claims of damage against the County Defendants, and remains liable to Howard to the extent these claims of damage are recovered from the County Defendants." (doc. no. 1561, exh. A at 2). Although this court granted Briscoe leave to amend, the court severed Howard's claims against the County from the rest of Briscoe's case, and reserved the subcontractor's claims until a later trial.

In September 1986, a final judgment was entered against the County for $16,240,000 plus pre-judgment and post-judgment interest. After exhausting post-trial motions and other avenues of appeal, the County

1. In a liquidating agreement, a general contractor agrees "to reimburse its subcontractor for damages [the subcontractor] suffered at the hands of the [owner] but only as and when the former receives payment from the [owner]." *Cable Belt Conveyors v. Alumina Partners of Jamaica,* 717 F.Supp. 1021, 1024 (S.D.N.Y.1989).

2. In the liquidating agreement, Howard represented the value of its claim against the County at $7,500,000. However, Briscoe now asserts that the value of the Howard claim is $5,464,-403.50, not including pre-judgment interest. (doc. no. 1563 at 2).

3. The liquidating agreement provides that Howard will share in the recovery against the County even if no recovery is specifically awarded for Howard's claim. Therefore, as long as Briscoe recovers against the County for its claims, the parties contemplated that Howard would share in the award.

Additionally, when Briscoe and Howard entered into the liquidating agreement, they based their allocation formula on the total pending claim against the County—$66,512,013.41 plus interest. (doc. no. 1562 at 10). As such, Briscoe asserts that Howard stood to recover in excess of $6,000,000.

finally paid Briscoe $28,310,257.63. However, Briscoe initially refused to pay Howard any part of this settlement arguing that Howard was not entitled to any recovery until the completion of the trial on Howard's claim. (doc. no. 1560, exh. A at 1). In response, Howard initiated an action against Briscoe in this court in July 1989. Subsequently, on January 31, 1990, Briscoe and Howard entered into a second agreement in which Briscoe agreed to remit $1,331,523.15 to Howard—the portion of the $28,310,257.63 recovery allocated to Howard under the November 1985 liquidating agreement. Additionally, the parties agreed that Howard would receive five percent (5%) of any additional monies Briscoe recovered on Howard's claims less Howard's share of litigation cost.[4] Now, pursuant to the November 1985 liquidating agreement, Briscoe seeks to prosecute Howard's claim against the County.

## DISCUSSION

1. *Motion for Summary Judgment:*

   A. The Standard for Summary Judgment:

A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The nonmoving party has the burden of "showing that there is a genuine issue for trial" by presenting specific facts beyond the pleadings. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), *cert. denied*, 484 U.S. 1066, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to find by a

preponderance of the evidence in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Conversely, "the moving party is 'entitled to a summary judgment as a matter of law' [if] the nonmoving party [fails] to make a sufficient showing on an essential element of its case with respect to which she has the burden of proof." *Celotex* 477 U.S. at 323, 106 S.Ct. at 2552.

   B. Analysis:

The County argues that Briscoe lacks standing to bring this claim. Specifically, the County contends that the November 1985 liquidating agreement contains an assignment of Howard's claim to Briscoe.[5] However, the County asserts, the rights of an assignee cannot rise higher than those of the assignor. In this case, Howard, the assignor, could not bring a claim against the County because privity did not exist between the parties. Therefore, the County states, Briscoe, as the assignee, is not entitled to bring a claim. This argument is unpersuasive.

   "Although the no-privity rule has barred subcontractors from recovering directly against the government, subcontractors' claims have long been recoverable by prime contractors through representative suits." [6] Kates, *Facilitating Subcontractor's Claims Against the Government Through the Prime Contractor as the Real Party In Interest*, 52 Geo.Wash. L.Rev. 146 (1983) (citing *Stout, Hall and Bangs v. United States*, 27 Ct.Cl. 385 (1892); *Consolidated Eng'g Co. v. United States*, 98 Ct.Cl. 256 (1943)). There are some limitations on this general rule. Specifically, the *Severin* doctrine states that a prime contractor may recover damages on behalf of its subcontractor only if the prime contractor suffered actual damages.

---

**4.** In this second agreement, Howard represented that the value of its claim was in excess of $6,000,000.

**5.** The language that the County contends is an assignment states: "Howard does hereby assign to Briscoe all its rights, title of interest in and to any judgment, award or settlement amount allo-

cated or determined as attributable to [Howard's] claims...." (doc. no. 1560, exh. A at 5).

**6.** According to Kates, in a representative suit, the prime contractor prosecutes the subcontractor's claims against the government.

*Severin v. United States,* 99 Ct.Cl. 435 (1943), *cert. denied,* 322 U.S. 733, 64 S.Ct. 1045, 88 L.Ed. 1567 (1944).[7] A prime contractor suffers actual damages if the prime contractor (1) has reimbursed its subcontractor for the subcontractor's damages; or (2) if the prime contractor remains liable for such reimbursement in the future. *J.L. Simmons Co. v. United States,* 304 F.2d 886, 888, 158 Ct.Cl. 393 (1962). Therefore, if a prime contractor has agreed to reimburse its subcontractor for damages the subcontractor suffered at the hands of the government, *but only as and when the former receives payment for them from the government,* a prime contractor may bring a suit on behalf of its subcontractor. *J.L. Simmons* 304 F.2d at 889 (emphasis supplied).

■ Because the *Severin* doctrine produced harsh results, the Court of Claims placed limitations on its application. *Folk Constr. Co. v. United States,* 2 Cl.Ct. 681, 685 (1983). Therefore, "a prime contractor is precluded from maintaining a suit on behalf of its subcontractor only when a contract clause or release completely exonerates the prime contractor from liability to its subcontractor." *Folk* at 685 (citing *J.L. Simmons*). In other words, the subcontract or release must expressly negate any liability of the prime contractor to the subcontractor. *Id.* Furthermore, the government has the burden of establishing that the prime contractor has no liability to its subcontractor. *Id.*

Typically, to determine if the prime contractor remains liable to the subcontractor, the court analyzes the prime contractor's obligations to prosecute the claims of the subcontractor against the owner. For example, in *J.L. Simmons,* the agreement between the prime contractor and the subcontractor provided that the subcontractor "waives, releases and discharges any and all liens, claim or right of lien ..." against the prime contractor except the prime contractor's obligation to bring the subcontractor's claims against the government. *J.L. Simmons* 304 F.2d at 887. Additionally, the agreement provided that the prime contractor would bear the litigation costs except that the subcontractor would provide witnesses and document preparation, and would pay a contingent fee to the attorney. Also, the agreement provided that if the prime contractor recovered anything on the claim, the subcontractor would receive seventy-five percent (75%) of the amount that remained after the deduction of attorney's fees and expenses. *J.L. Simmons* 304 F.2d at 888. Finally, the agreement provided that such a recovery (if an amount had indeed been recovered) would "operate as a full and complete release of any and all liability" of the prime contractor. *Id.*

In their analysis, the court noted that the agreement did not act as a complete exoneration of the prime contractor. Specifically, the court found that the agreement did not contain any clause that expressly negated the prime contractor's liability to the subcontractor for the claims being asserted

---

7. The *Severin* doctrine applies to breach of contract claims against the federal government. However, several states have adopted the doctrine for cases involving state government entities. *See University of Alaska v. Modern Const., Inc.,* 522 P.2d 1132 (Alaska 1974); *D.A. Parrish & Sons v. County Sanitation Dist. No. 4,* 174 Cal.App.2d 406, 344 P.2d 883 (1959); *Kensington Corp. v. State,* 74 Mich.App. 417, 253 N.W.2d 781 (1977); *St. Paul Dredging Co. v. State,* 259 Minn. 398, 107 N.W.2d 717 (1961); *Ukrainian Nat. Urban Renewal Corp. v. Joseph L. Muscarelle, Inc.,* 151 N.J.Super. 386, 376 A.2d 1299 (A.D.1971); *Tully & DiNapoli, Inc. v. State,* 51 Misc.2d 11, 272 N.Y.S.2d 667 (N.Y.Ct.Cl.1966). *But see Department of Transp. v. Claussen Paving Co.,* 246 Ga. 807, 273 S.E.2d 161 (1980) (Contrary to federal law, the court placed the burden of proving the prime contractor's liabili-

ty to the subcontractor on the prime contractor.); *Walter Kidde Constructors, Inc. v. Conn.,* 37 Conn.Sup. 50, 434 A.2d 962 (1981) (The court found that the prime contractor could not prove its liability to the subcontractor because a state governmental immunity statute prohibited the prime contractor's prosecution of the subcontractor's claim). Both *Claussen* and *Walter Kidde* run counter to federal and state case law. As such, these state cases are not persuasive authority for this court.

Nevada courts have yet to address the applicability of the *Severin* doctrine to breach of contract claims against Nevada counties. However, as the following discussion demonstrates, even if this court assumes that *Severin* applies, this court finds that *Severin* does not bar Briscoe's present action.

against the owner. In fact, the court stated, such claims were expressly exempted from the waiver and release. Additionally, the court stated that the agreement did not contain an express exculpatory clause for the subcontractor's claims against the owner. The court concluded:

> We have indicated that plaintiff's liability is not expressly negated in any event. Rather, the releases simply purport to set forth the manner in which plaintiff's liability is *to be extinguished.* Certainly implicit, at least, in these provisions would seem to be a recognition on the part of the parties that plaintiff *is* liable for these claims. Otherwise, there would be no reason for the parties to go to the trouble of providing a method for extinguishing a non-existing liability. Consequently, we have here a situation where plaintiff's liability for these claims was recognized and expressly preserved at the time the releases were entered into.

*J.L. Simmons* 304 F.2d at 890 (emphasis in original).

Therefore, the court concluded, "the releases neither exonerate plaintiff from liability *ab initio* nor subsequently, but do impose certain obligations on plaintiff which it must fulfill before its duty to reimburse these subcontractors for the damage allegedly caused by the Government is extinguished." *Id.*

In *Folk,* 2 Cl.Ct. 681, a case decided twenty years after *J.L. Simmons,* the United States Claims Court demonstrated that its analysis of prime contractor liability had not changed. In *Folk,* an agreement between the prime contractor and the subcontractor provided that the subcontractor "fully and finally" released the prime contractor from all claims of damages "except to the extent such claims are not released herein." *Folk* at 685. Specifically, the agreement required that the prime contractor "cooperate" in the prosecution of the subcontractor's claims. The court held that the prime contractor's "continuing obligation to cooperate in the prosecution of [the subcontractor's] suit is an integral part of the release." *Id.* at 685. There-

fore, the court held, the release was not complete and unconditional. *Id.*

Such analysis has also found its way into the United States District Courts. For example, in *Cable Belt Conveyors v. Alumina Partners of Jamaica,* 717 F.Supp. 1021 (S.D.N.Y.1989), the prime contractor and the subcontractor entered into an agreement in which both parties released each other from any claim they might have against each other. Additionally, the parties agreed that the prime contractor would pursue a claim against the owner on behalf of the subcontractor. If there was any recovery, the prime contractor would retain one-third (33.3%) of the award, and the subcontractor would receive two-thirds (66.7%) of the recovery. The *Cable Belt* court expressly adopted the language in *J.L. Simmons,* and pronounced that "a liquidating agreement, under which the general contractor consents 'to reimburse its subcontractor for damages it has suffered at the hands of the [owner] but only as and when the former received payment from the [owner]' will not eliminate the owner's liability." *Cable Belt* at 1024. The court reviewed the obligations of the prime contractor to bring a claim against the owner on behalf of the subcontractor, and found that the agreement did not exonerate the prime contractor. Rather, the agreement merely limited the prime contractor's "liability to approximately two-thirds of what it can recover from [the owner]" *Id.* at 1026.

In the present case, Howard released and discharged Briscoe "from any and all [present and future] obligations, debts, claims, and demands" except for the obligations enumerated in the agreement. Specifically, the agreement obligated Briscoe to (1) present and pursue Howard's claims against the County; (2) bear ninety-two percent (92%) of the litigation cost associated with Howard's claim; (3) cooperate fully and completely with Howard in the presentation of Howard's claims; and (4) pay Howard an allocated portion of the recovery. (doc. no. 1561, exh. A). The liquidating agreement did not contain any provision that either negated Briscoe's liability, or exonerated Briscoe from liability.

Clearly then, this agreement does not operate as a complete and unconditional release. Therefore, this court finds that, like the agreements in *J.L. Simmons, Folk,* and *Cable Belt,* the liquidating agreement between Briscoe and Howard merely sets forth the manner in which Briscoe's liability is to be extinguished. Accordingly, Briscoe may prosecute Howard's claim against the County.

▮ However, the County's argument contains a twist that remains unaddressed by the preceding discussion. The crux of the County's argument is that the liquidating agreement contained an impermissible assignment of Howard's claim to Briscoe, and therefore, Briscoe does not have standing to prosecute Howard's claims. As previously discussed, the disputed provision assigns to Briscoe all of Howard's rights and title of interest in any judgment, award or settlement from the claim against the County. This court finds this argument unpersuasive.

The assignment explicitly limits itself to the proceeds of any judgment, award or settlement. While Briscoe cited this court to several decisions that distinguish between an impermissible assignment of a claim, and a permissible assignment of proceeds, the County failed to provide any authority for their proposition that Howard could not assign the proceeds. Rather, the County urges this court to review the entire liquidating agreement in total and find that the broad discretion afforded Briscoe in the presentation of Howard's claims indicates that the assignment is not merely for proceeds, but indeed operates as an assignment of a claim. However, case law indicates that courts have authorized agreements that afforded prime contractors broad discretion in the presentation of subcontractors' claims. *See J.L. Simmons* 304 F.2d at 887–888 (The agreement between the prime contractor and the subcontractor provided that the prime contractor controlled the selection of attorneys for the presentation of all claims, and therefore implicitly controlled the presentation of all claims.).

▮ Additionally, the case law overwhelmingly holds that a prime contractor can prosecute a subcontractor's claim against the owner—in the absence of privity—provided the prime contractor retains some obligation to prosecute the subcontractor's claim. The liquidating agreement in this case contains such an obligation. Accordingly, it would be pointless to assign Howard's claim to Briscoe.[8]

**8.** This court notes that, even if no liquidating agreement existed between Briscoe and Howard, we would reach the same conclusion. Specifically, a representative suit (as defined on p. 7) is justified "by the theory that the subcontractors' claims are a component of the prime contractor's claims against the government." Kates, *supra,* p. 7 at 1. Therefore, in *United States v. Blair,* 321 U.S. 730, 737–738, 64 S.Ct. 820, 824, 88 L.Ed. 1039 (1944), the Supreme Court stated:

> Clearly the subcontractor could not recover this claim in a suit against the United States, for there was no express or implied contract between him and the Government. (citation omitted). But it does not follow that [the prime contractor] is barred from suing for this amount. [The prime contractor] was the only person legally bound to perform his contract with the Government and he had the undoubted right to recover from the Government the contract price for the tile, terrazzo, marble and soapstone work whether that work was performed personally or through another. This necessarily implies the right to recover extra costs and services wrongfully demanded of [the prime contractor] under the contract, regardless of whether such costs were incurred or such services were performed personally or through a subcontractor. [The prime contractor's] contract with the Government is thus sufficient to sustain an action for extra costs wrongfully demanded under that contract. (citation omitted).

Subsequently, the United States Court of Claims reconciled *Severin* and *Blair* stating that a prime contractor may not recover on behalf of the subcontractor if the subcontract expressly negates the prime contractor's liability to the subcontractor. However. if the subcontract is silent on the issue of nonliability, the prime contractor may recover on behalf of the subcontractor. *Donovan Constr. Co. v. United States,* 149 F.Supp. 898, 900, 138 Ct.Cl. 97 (1957).

As these cases demonstrate, a liquidating agreement is not a condition precedent to the maintenance of a representative suit. Rather, a representative suit may proceed when the subcontractor has not released the prime contractor from liability for the government's breaches of the prime contract. *See* Kates, *supra,* p. 7.

For these reasons, this court finds that the assignment of Howard's entitlement and title of interest in any judgment, award or settlement does not amount to an improper assignment of Howard's claim: Briscoe has standing to bring Howard's claim. Accordingly, the County's Motion for Summary Judgment is denied.

### 2. *Motions for Declaratory Judgment:*

■ Pursuant to an Order issued by this court on October 10, 1990, (doc. no. 1556), Briscoe and the County both filed motions for declaratory judgment.[9] The issue addressed in these motions, as accurately framed by Briscoe is, "[i]n what way, if any, does the liquidating agreement between Briscoe and Howard affect the amount of the liability of the County to Briscoe." (doc. no. 1560 at 5).

The County seeks a declaratory judgment that limits Briscoe's maximum recovery from the County to Briscoe's obligation to pay Howard under the liquidating agreement. In support of this position—and in reliance on *Severin* and subsequent cases—the County focuses on (1) the difference in Briscoe's liability to Howard pursuant to the subcontract and the liquidating agreement; and (2) the theory that "no damages have accrued to Briscoe unless Briscoe is liable for the Howard damages." (doc. no. 1561 at 21).

According to the County, the subcontract obligated Briscoe to remit Howard's proportionate share of any recovery Briscoe receives from the County.[10] Therefore, the County states, Briscoe represented in its Second Amended Complaint, that Briscoe "remains liable to Howard to the extent these claims of damage are recovered from the County Defendants." (doc. no. 1561, exh. A at 2).

However, the County argues, "Briscoe severely limited its obligations to Howard under the Subcontract when it entered into the Liquidating Agreement in November 1985." (doc. no. 1561 at 10). Specifically, the County contends, the liquidating agreement limits Briscoe's liability to nine and one half percent (9.5%) of the first $20,000,000 recovered from the County, and five percent (5%) of the rest of the recovery. As such, the County argues, Briscoe is no longer liable to Howard to the extent Briscoe recovers against the County. Indeed, the County notes, at this time, Briscoe remains liable to Howard for only five percent (5%) of the presently pending 5.5 million dollar claim. Therefore, the County contends, under the *Severin* doctrine, Briscoe may only maintain this action for the monetary amount that it is liable to Howard, and this court should limit the County's liability to the amount that Briscoe will pay to Howard pursuant to the liquidating agreement.

Briscoe counters that the liquidating agreement "merely places a maximum limit on the amount which Briscoe and Howard may recover *from one another*" (doc. no. 1560 at 5) (emphasis in original), and Briscoe contends, there is no case law that prohibits the prime contractor and the subcontractor from entering a contract that details how the money will be shared between them once the prime contractor recovers against the owner.

The combined efforts of the parties and this court reveal two cases that involve an agreement that obligates the prime contractor to remit less than full recovery to the subcontractor. However, neither court addressed an argument similar to the County's position. Although, the County presents this court with a novel question,

---

**9.** The Order stated in pertinent part: "ORDERED that the County of Clark and the Frank Briscoe Company, Inc. shall file simultaneous motions for declaratory judgment with appropriate points and authorities dealing with the issues mentioned in the respective Status Reports." (doc. no. 1556 at 1).

**10.** The ninth paragraph of the subcontract provides that if the owner delays the subcontractor,

and if the prime contractor receives damages or other compensation for the delays, the "Subcontractor shall receive his proportionate share thereof ... reduced by Subcontractor's proportionate share of contractor's expense in connection with such recovery including professional and counsel fees and other costs and expenses." (doc. no. 1561, exh. B at 2).

this court finds that the County's argument cannot withstand close scrutiny.

As previously discussed, in *J.L. Simmons*, 304 F.2d 886, the agreement between the prime contractor and the subcontractor obligated the prime contractor to bring an action against the government on behalf of the subcontractor. The agreement also provided that the subcontractor would receive seventy-five percent (75%) of the amount recovered by the prime contractor after the deduction for attorney's fees and expenses. *J.L. Simmons* 304 F.2d at 888.

Importantly for our purposes, the court did not analyze the prime contractor's liability to the subcontractor in terms of monetary liability (i.e., the recovery allocated to the subcontractor). Rather, the court confined its analysis to the prime contractor's obligation to bring a claim against the owner on behalf of the subcontractor. After the court satisfied itself that the agreement imposed certain obligations on the prime contractor in the presentation of the subcontractor's case, the court held that the prime contractor was "presently subject to liability on these claims and will continue to be so until liability is extinguished in accord with the method agreed to by the parties." *J.L. Simmons* 304 F.2d at 890.

In *Cable Belt*, 717 F.Supp. 1021, the prime contractor and the subcontractor also entered into an agreement that obligated the prime contractor to prosecute the subcontractor's claims against the owner. The agreement specified that the prime contractor would receive one-third (33.3%) and the subcontractor would receive two-thirds (66.7%) of any recovery. As in *J.L.*

*Simmons*, the court did not address the division of recovery when it addressed the existence of the prime contractor's liability to the subcontractor. Rather, the court focused on the prime contractor's obligations to prosecute the subcontractor's claim against the owner, and, like the court in *J.L. Simmons*, found that the agreement "simply 'set forth the manner in which [the prime contractor's] liability is to be extinguished.'" *Cable Belt* at 1027 (quoting *J.L. Simmons*).[11]

These cases clearly demonstrate that, contrary to the County's assertions, a prime contractor's liability to its subcontractor—and therefore, the prime contractor's right to recover on the subcontractor's claims—is not connected to the agreed division of the recovery. Indeed, the allocation schemes did not even warrant mention in the cases discussed, and for good reason: courts are rarely suited to analyze the value of consideration given and received. Although the subcontractor will obtain only a portion of the recovery, it may receive benefits that are impossible to quantify. Therefore, to avoid this legal quagmire, courts developed an analysis that emphasizes the prime contractor's obligations to prosecute the subcontractor's claim. Once a court satisfies itself that the prime contractor retains obligations under the agreement with the subcontractor, the prime contractor may initiate an action on behalf of the subcontractor: The division of the recovery is not important.

Undaunted by this unfavorable case law, the County argues that, although courts indulged in a limited analysis for agreements that provided for the prime contractor's retention of up to thirty-three percent (33.3%) of the recovery, a similar analysis is

**11.** Importantly, the *Cable Belt* court cites with approval several cases that seemingly require the prime contractor to remit full recovery to the subcontractor. For example, the court quotes from *Barnard–Curtiss Co. v. United States*, 301 F.2d 909, 157 Ct.Cl. 103 (1962): "In order to recover this amount from [the owner, the general contractor] must first show that it is liable to the subcontractor for the amount." Additionally, the court cites *Lambert Houses Redevelopment v. HRH Equity Corp.*, 117 A.D.2d 227, 502 N.Y.S.2d 433, 435 (1986): "Agreements liquidating the general contractor's liability in such amounts as can be recovered against the party who allegedly caused the injury have been uniformly upheld." Despite this language, the court still did choose to not address the allocation of the recovery.

*Cable Belt*'s use of these cases deflates the County's assertions that (1) a proper liquidating agreement allocates the full recovery to the subcontractor; and (2) the prime contractor is liable to the subcontractor only to the extent the prime contractor remits the recovery to the subcontractor.

unwarranted for an agreement that requires the prime contractor to remit only nine and one half percent (9.5%) of the first $20,000,000, and five percent (5%) of any additional recovery. However, the County provides no authority for its argument, and absent such authority, this court is unwilling to set forth an arbitrary determination of permissible and impermissible allocation schemes.

The County's argument that Briscoe will receive a windfall under the terms of the liquidating agreement is equally unavailing. The issue for the County is the existence of its liability; it is not an issue of who ultimately receives the recovery. Briscoe and Howard, two experienced and sophisticated business entities, offered and received valuable consideration to enter into the liquidating agreement. Both the County and this court are in a poor position to analyze the value of such consideration, and to make any determinations of the existence of excess or unfairness. As such, the County cannot argue windfall to prematurely limit its own liability. For these reasons, the County's Motion for Declaratory Judgment is denied.

## CONCLUSION

Based on the preceding discussion, IT IS ORDERED that Briscoe's Motion for Declaratory Judgment (doc. no. 1560) is GRANTED;

IT IS FURTHER ORDERED that the County's Motion for Declaratory and Summary Judgment (doc. no. 1561) is DENIED.