**JAMES REEVES CONTRACTOR, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 92–326C.**

United States Court of Federal Claims.

Aug. 19, 1994.

William Lee Guice, III, Biloxi, MS, for plaintiff. Edgar F. Maier, of counsel.

Charles F. Beall, Jr., with whom were Asst. Atty. Gen. Frank W. Hunger, David H. Cohen, and Anthony H. Anikeeff, Washington, DC, for defendant.

## OPINION

BRUGGINK, Judge.

This is an action brought by a prime contractor on behalf of a subcontractor to recover costs arising from the sub's efforts to satisfy allegedly defective building specifications. The Government has moved for summary judgment on the ground that neither the prime nor the sub have the legal right to recover contract damages from the United States. After considering the briefing and oral argument, the court concludes that the motion is due to be granted.

## BACKGROUND

In August 1989 the Navy contracted with the plaintiff ("Reeves") to build a Navy/Marine Corps Reserve Center in Gulfport, Mississippi. Reeves subcontracted with Carriere–Stumm, Inc. ("Carriere") to provide metal roofing and side paneling required by the contract, as well as the labor and materials for built up roofing. The subcontract provided that any disputes between the parties would be settled by arbitration and that the arbitrators' decision would be final.

During performance, a dispute arose between the Navy, Reeves, and Carriere when the Navy rejected metal wall panels supplied by Carriere. On March 20, 1991, Reeves submitted a certified claim on behalf of Carriere for additional costs incurred because of the rejection. The Contracting Officer ("CO") denied the claim. Ultimately, Carriere proved unable to provide panels that satisfied the Navy. Reeves issued a notice of default to Carriere and subcontracted with another company to finish work on the metal panels. Carriere filed suit against Reeves in district court seeking payment for materials and equipment furnished and labor performed in connection with the roofing and the siding. Reeves invoked the contract clause and the court referred the matter to arbitration.

In the arbitration, Reeves brought a claim against Carriere, seeking, among other remedies, payment for damages resulting from the Carriere's failure to furnish metal panels that complied with the contract specifications. Reeves' allegations put in issue the Navy's reliance on the wall paneling specifications to reject Carriere's submission. In its pre-hearing submission, Carriere denied Reeves' right to recover, and counterclaimed for damages in connection with Reeves' asserted failure to pay for roofing work completed, and for Carriere's expense in connection with the unsuccessful efforts to satisfy the Navy with respect to the panels. As to the latter, Carriere alleged in its pre-hearing submission that it was "placed in the position of an impossible performance due to the fact that it could not meet the Navy's defective specifications." Each of the seven witnesses included in Carriere's list was to testify about "the submittal and rejections of the metal wall panels." They were listed for no other purpose. In Reeves' answer to the counterclaim, it contended, among other things, that Carriere defaulted in its obligation to provide metal panels that complied with the terms of Reeves' contract with the Navy.

That the issue of the Navy's allegedly improper rejection of the panels was the subject of the arbitration is made clear from transcript excerpts furnished. Mr. Rob

Stumm, one of the principals of Carriere, affirmed that the claim pending before the arbitration panel and the complaint pending before this court are "the same claim." Much of his testimony concerned whether the panels could be expected to "oil can" and the Navy's insistence on qualities in the paneling that Stumm believed were not called for by the specifications. Oil canning, he explained, "was inherent to these panels and could not be eliminated." Carriere's counsel suggested in his closing that the arbitration panel "treat the claim against the Navy. And to the extent there is an award for Carriere–Stumm, that James Reeves be entitled to reimbursement out of the Navy claim for the award."

The arbitrators awarded Reeves $93,865, including $70,000 for reprocurement costs for installing compliant metal panels. With one exception not relevant here, the arbitrators denied all aspects of Carriere's claim. The award concludes with the following language: "This Award is in full settlement of all claims and counterclaims submitted to this Arbitration." In view of the factual and contractual issues presented to the arbitration panel, the award can only be read as a rejection of Carriere's request for payment due to the Navy's rejections of paneling.

During oral argument, counsel for Reeves represented that the arbitrators' decision was confirmed in the Mississippi courts. It thus has the same preclusive effect as a court judgment.

At oral argument, the court permitted the filing of a letter, dated April 18, 1994, from Reeves' to Carriere's counsel. The writer emphasizes that the arbitrators were deciding the dispute "solely between James Reeves and Carriere–Stumm and did not resolve the issue presented by Carriere–Stumm through James Reeves to the Claims Court, i.e., whether the Contracting Officer's final decision rejecting the MCBI panel as being inappropriate for the purpose intended should be reversed."

Reeves and Carriere executed a "Claim Agreement," whereby Reeves authorized the sub to commence the present suit in the prime's name. Reeves' allegations in its complaint here are in substance the same as those in Carriere's submissions to the arbitrators, at least insofar as the metal panels are concerned. The complaint recites, for example, that the specifications do not require that the panels be free of oil canning, and that the Navy's insistence on such a characteristic put plaintiff "in the position of impossible performance." The amount sought in the original complaint here is identical to that sought by Carriere in the arbitration proceeding.

Defendant has moved for summary judgment, asserting that, because the arbitration has relieved plaintiff of any liability to Carriere, Reeves has no liability to pass through to the Government. Plaintiff counters that the arbitration did not address the precise claim brought here, and thus there is potential liability in Reeves that can be asserted against the Government.

## DISCUSSION

■ Lacking privity of contract with the Government, a subcontractor may not directly sue the United States. Accordingly, when it wishes to assert a claim arising out of the main contract, it must do so through the prime contractor. A prime contractor, on the other hand, has no basis for sponsoring such a suit unless it has paid the subcontractor, or remains liable to reimburse it in the future. *Severin v. United States*, 99 Ct.Cl. 435, 443, 1943 WL 4198 (1943), *cert. denied*, 322 U.S. 733, 64 S.Ct. 1045, 88 L.Ed. 1567 (1944). The prime contractor's suit is thus based on its liability to the sub for the government's breach.

■ The narrow question presented by the Government's motion is whether any relevant liability persists between the prime and the subcontractor. The United States cannot be liable to Reeves if Reeves cannot be liable to Carriere. For that reason, plaintiff's efforts to distinguish the arbitration proceeding from Reeves' current claim are unavailing. It is of no consequence that the arbitrators did not address the question of the Government's liability to Carriere for defective specifications. Indeed, they could not have done so. They did, however, finally

address the only claim that does matter, the one directed by Carriere against Reeves.

■ The parties agree that the effect of the arbitration award is controlled by Mississippi law. Mississippi Code § 11–15–137 provides that a confirmed arbitration award will be treated as a judgment.* With respect to questions of law and fact an arbitration award is final and conclusive. *Yarbro v. Purser,* 114 Miss. 75, 74 So. 425 (1917) (The effect of an agreement to submit controversy to arbitration "was to merge the original causes of action and defenses into the written award and make that the exclusive source of rights and liabilities of the parties."). *Id.,* 114 Miss. 75, 74 So. at 427. *See also Hutto v. Jordan,* 204 Miss. 30, 36 So.2d 809, 812 (1948); *Memphis & C. R. R. v. Scruggs,* 50 Miss. 284 (1874). The decision of the arbitrators is thus res judicata as between Reeves and Carriere. Under Mississippi law, there remains no possible liability from Reeves to Carriere in light of the arbitration award.

■ That the award does not make detailed findings as to the metal paneling is of no moment. The Mississippi Supreme Court cited the following language with approval in *Horne v. State Bldg. Comm'n,* 222 Miss. 520, 76 So.2d 356, 358 (1954):

> [T]here need not be an express finding on each particular point, if all are included either expressly or by necessary implication, for the duty of arbitrators ordinarily is satisfied if they find generally in such a way as substantially to cover all questions embraced in the submission[s] which have been presented to them.

*Id.* (quoting 3 Am.Jur., *Arbitration and Award,* pp. 944–945). *See also Gonce v. Veterans Administration,* 872 F.2d 995, 999 (Fed.Cir.), *cert. denied,* 493 U.S. 890, 110 S.Ct. 234, 107 L.Ed.2d 186 (1989).

The court is satisfied that the same issues with respect to whether the panels did or could meet the Navy's specifications were presented to the arbitration panel as have been presented here. Nevertheless, even if the precise claim here—defective specifications—was not advanced in the arbitration,

the Mississippi courts would not allow it to be relitigated as between the two private parties. The Mississippi Supreme Court held in *Walton v. Bourgeois,* 512 So.2d 698, 702 (Miss.1987), that "where one has a choice of more than one theory of recovery for a given wrong, she may not assert them serially in successive actions but must advance all at once on pain of the bar of res judicata." *See also Dunaway v. W.H. Hopper & Associates, Inc.,* 422 So.2d 749, 751 (Miss.1982) (Res judicata bars litigation in a second lawsuit on the same cause of action of all defenses to recovery that were available to the parties in the first action, regardless of whether they were asserted or determined in the prior proceeding.).

The present circumstances are directly analogous to those in cases in this circuit holding that a general release conditioned only by an obligation to pay over recoveries against the Government to the subcontractor does not preserve liability between the prime and the sub. *E.g., Pearson, Dickerson, Inc. v. United States,* 115 Ct.Cl. 236, 243–244, 264, 1950 WL 5011 (1950); *George Hyman Constr. Co. v. United States,* 30 Fed.Cl. 170, 177 (1993); *see also J.L. Simmons Co. v. United States,* 158 Ct.Cl. 393, 399–400, 304 F.2d 886, 889 (1962). The arbitrators' decision here operated effectively as a general release with respect to those of Carriere's losses that Reeves now seeks to assert against the Government. Neither the Claim Agreement nor the letter of April 18 recognize or preserve any ongoing liability from Reeves to its subcontractor.

### CONCLUSION

It follows that Reeves has suffered no injury at the hands of the Navy and has no continuing exposure to Carriere for allegedly defective specifications. Defendant's motion for summary judgment is therefore granted. The Clerk is directed to dismiss the complaint. Costs to defendant.

---

* Upon the granting of an order confirming, modifying or correcting an award, "a judgment or decree shall be entered and be enforced as any other judgment or decree. Costs may be awarded by the court." Miss.Code § 11–15–137.